## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM FOR THE CITY OF PROVIDENCE, derivatively as a shareholder of CREDIT SUISSE GROUP AG on behalf of CREDIT SUISSE GROUP AG, <br><br> Petitioner <br><br> v. <br><br> BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, <br><br> Respondent. | Misc. Case No. <br><br> Underlying Action: <br><br> *Employees Retirement System for the City Of Providence, derivatively as a shareholder of Credit Suisse Group AG on behalf of Credit Suisse Group AG vs. Urs Rohner et al*, Docket No. 651657/2022 (N.Y. Sup Ct. Apr 26, 2022) |

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ADMINISTRATIVE PROCEDURES ACT REVIEW AND FOR DECLARATORY RELIEF**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jeroen van Kwawegen
Jeremy P. Robinson
Edward G. Timlin
Maria Nudelman
Eric J. Riedel
Stephen C. Boscolo
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400

*Counsel for Petitioner*

Dated: July 25, 2024

## **CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 4

    I.    The NY Action ................................................................................. 4

    II.    The Federal Reserve Found Serious Risk Failures At Credit Suisse ...................... 5

    III.    Credit Suisse Withheld Materials As Privileged For The Federal Reserve ........... 5

    IV.    Petitioner Exhausted Administrative Remedies By Making A Touhy Request, Which the Federal Reserve Denied Without Reviewing All Documents ................................................................................. 6

JURISDICTION AND VENUE ............................................................................... 9

ARGUMENT ...................................................................................................... 10

    I.    Legal Standard ................................................................................. 10

    II.    The Withheld Information Is Not Privileged ......................................... 12

        A.    Bank Examination Reports Should Be Produced ..................... 12

        B.    The Withheld Internal Bank Communications Do Not Constitute BEP ................................................................................. 13

            1.    The Federal Reserve Applied An Incorrect Standard For BEP ......... 13

            2.    Conclusory Privilege Assertions Cannot Satisfy The Federal Reserve's Burden ................................................................. 17

        C.    Interview Transcripts Are Not Privileged ................................. 19

            1.    BEP Does Not Support Fully Withholding The Transcripts ............. 20

            2.    LEP Does Not Support Fully Withholding The Transcripts ............. 20

    III.    There Is Good Cause To Override Privilege ........................................... 24

CONCLUSION ................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  2016 WL 6779901 (Nov. 16, 2016) .......................................................................13

*Aleutian Cap. Partners, LLC v. Scalia*,
  975 F.3d 220 (2d Cir. 2020) ...............................................................................11

*Alexander v. FBI*,
  186 F.R.D. 154 (D.D.C. 1999) .............................................................................21

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ...........................................................................10

*In re B of I Holding Inc. Securities Litigation*,
  2022 WL 507663 (S.D. Cal. Feb. 18, 2022) ..........................................................16

*In re Bankers Tr. Co.*,
  61 F.3d 465 (6th Cir. 1995) .................................................................................13

*Benn v. City of New York*,
  2019 WL 4857339 (S.D.N.Y. Oct. 2, 2019) .....................................................22, 23

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...........................................................................................10

*In re Citigroup Bond Litig.*,
  2011 WL 8210671 (S.D.N.Y. Dec. 5, 2011) ....................................................13, 25

*City of N.Y. v. FedEx Ground Packaging Sys., Inc.*,
  2017 WL 4155410 (S.D.N.Y. Sept. 19, 2017) ........................................................21

*Coleman v. Cnty. Of Suffolk*,
  174 F.Supp.3d 747 (E.D.N.Y. 2016), *aff'd*, 685 F. App'x 69 (2d Cir. 2017) ...........23

*Comm. for Nuclear Resp., Inc. v. Seaborg*,
  463 F.2d 788 (D.C. Cir. 1971) .............................................................................11

*E.P.A. v. Gen. Elec. Co.*,
  197 F.3d 592 (2d Cir. 1999) .............................................................................1, 9

*Emps. Ret. Sys. for City of Providence v. Rohner*,
  No. 1610, 2024 WL 479432 (N.Y. App. Div. Feb. 8, 2024) ....................................27

*FHFA v. HSBC North America Holdings Inc.*,
  2014 WL 1909446 (S.D.N.Y. May 13, 2014) ........................................................16

*In re Franklin Nat. Bank Sec. Litig.*,
478 F.Supp. 577 (E.D.N.Y. 1979) ................................................................. *passim*

*Heinrich Motors, Inc. v. NLRB*,
403 F.2d 145 (2d Cir. 1968)......................................................................11

*King v. Habib Bank Ltd.*,
2023 WL 8879170 (S.D.N.Y. Dec. 22, 2023) .................................................11, 14

*Kinoy v. Mitchell*,
67 F.R.D. 1 (S.D.N.Y. 1975) ......................................................................11

*Linde v. Arab Bank, PLC*,
2009 WL 305528 (E.D.N.Y. Sept. 21, 2009) ..................................................16

*Meisel v. F.B.I.*,
204 F.Supp.2d 684 (S.D.N.Y. 2002).........................................................1, 9

*Merchants Bank v. Vescio*,
205 B.R. 37 (D. Vt. 1997)........................................................................11

*Micillo v. Liddle & Robinson LLP*,
2016 WL 2997507 (S.D.N.Y. May 23, 2016) ................................................21

*In re Micron Tech., Inc. Sec. Litig.*,
264 F.R.D. 7 (D.D.C. 2010)......................................................................23

*Moore v. Valder*,
2001 WL 37120629  (July 31, 2001) ..........................................................22

*Niagara Falls Bridge Commission v. The United States Department of Homeland
Security et al.*,
Docket No. 1:09-mc-00041, ECF No. 13 (W.D.N.Y. Jun 19, 2009).........................9

*Nunez v. City of New York*,
2023 WL 6850315 (S.D.N.Y. Oct. 17, 2023) .................................................23

*In re Packaged Ice Antitrust Litig.*,
2011 WL 1790189 (E.D. Mich. May 10, 2011)..........................................11, 20, 22

*Principe v. Crossland Sav., FSB*,
149 F.R.D. 444 (E.D.N.Y. 1993) ............................................................ *passim*

*In re Providian Fin. Corp. Sec. Litig.*,
222 F.R.D. 22 (D.D.C. 2004).................................................................14, 17, 26

*Pueblo v. Nat'l Indian Gaming Comm'n*,
731 F.Supp.2d 36 (D.D.C. 2010) ................................................................10

*Rhoads v. U.S. Dep't of Veterans Affs.*,
  242 F.Supp.3d 985 (E.D. Cal. 2017)........................................................10

*S.E.C. v. Chakrapani*,
  2010 WL 2605819 (S.D.N.Y. June 29, 2010) ...............................................23, 24

*Saleh v. Blinken*,
  2023 WL 5091819 (2d Cir. Aug. 9, 2023)......................................................10, 11

*Schreiber v. Soc'y for Sav. Bancorp, Inc.*,
  11 F.3d 217 (D.C. Cir. 1993) ..........................................................3, 12, 17

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  2022 WL 3567340 (M.D. Pa. Aug. 18, 2022) .............................................. *passim*

*Seafirst Corp. v. Jenkins*,
  644 F.Supp. 1160 (W.D. Wash. 1986)..........................................................28

*In re Sealed Case*,
  856 F.2d 268 (D.C. Cir. 1988) .............................................................20, 21

*Sernoffsky v. San Diego Police Captain Novak*,
  2024 WL 3100275 (S.D. Cal. June 21, 2024)....................................................24

*In re Subpoena Served Upon the Comptroller of the Currency*,
  967 F.2d 630 (D.C. Cir. 1992) ............................................................16, 20

*In re The City of New York*,
  607 F.3d 923 (2d Cir. 2010)...........................................................12, 21, 25

*United States ex rel. Touhy v. Ragen*,
  340 U.S. 462 (1951).................................................................6, 8, 10, 20

*United States v. Painting Known as "Le Marche"*,
  2008 WL 2600659 (S.D.N.Y. June 25, 2008) ...................................................21

*United States v. Wey*,
  252 F.Supp.3d 237 (S.D.N.Y. 2017)........................................................21, 22

*In re Vescio*,
  208 B.R. 122 (Bankr. D. Vt. 1997)............................................................15

*In re Wilmington Tr. Sec. Litig.*,
  2016 WL 9753979 (D. Del. Aug. 16, 2016) .............................................. *passim*

*Wultz v. Bank of China Ltd.*,
  291 F.R.D. 42 (S.D.N.Y. 2013) ..............................................................17

*Wultz v. Bank of China Ltd.*,
   61 F.Supp.3d 272 (S.D.N.Y. 2013) ............................................................ *passim*

**STATUTES**

28 U.S.C.A. § 1391 .................................................................................................10

28 U.S.C.A. §2201 ...................................................................................................1

5 U.S.C. § 301 ..........................................................................................................6

5 U.S.C. §702 et seq. ............................................................................................1, 9

5 U.S.C. § 706(2)(A), (C) .....................................................................................10

28 U.S.C. § 1331 ......................................................................................................9

28 U.S.C. §§ 1441 et seq. ........................................................................................8

**OTHER AUTHORITIES**

12 C.F.R. § 261 *et. seq.* .........................................................................................11

12 C.F.R. § 261.23(b)(2) ....................................................................................7, 25

Petitioner Employees Retirement System for the City of Providence ("Petitioner"), plaintiff in a New York State action, brings this miscellaneous motion pursuant to the Administrative Procedures Act ("APA").[1]  Petitioner respectfully seeks summary judgment and a declaration pursuant to 5 U.S.C. §702 et seq., and 28 U.S.C.A. §2201 that documents and testimony withheld from production by Credit Suisse Group AG ("Credit Suisse" or the "Bank") based on the bank examination privilege and law enforcement privilege are not privileged or, in the alternative, that such privilege should be overridden.[2]

## PRELIMINARY STATEMENT

Petitioner is the plaintiff in a stockholder derivative action pending in New York Supreme Court (the "NY Action") that seeks to hold certain former Credit Suisse directors and executives ("Defendants") accountable for breaching their fiduciary duties by failing to establish and oversee reasonable risk management processes at the bank's New York-based operations.  Defendants' breaches caused Credit Suisse to suffer billions of dollars in losses and put the entire Bank in existential danger.

On December 8, 2022, the Hon. Andrea Masley denied Defendants' motion to dismiss (later affirmed by the New York Appellate Division for the First Department) and allowed discovery to commence.  In March 2023, the Swiss government took emergency action and required UBS to acquire Credit Suisse in a stock-for-stock merger.  In July 2023, Credit Suisse

---

[1] *See E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 599 (2d Cir. 1999) (requiring a new action for review of discovery under the APA not required "because it would result in time-consuming additional litigation that would either render the resulting discovery moot for the original litigation or unnecessarily delay that action"); *Meisel v. F.B.I.*, 204 F.Supp.2d 684, 688 (S.D.N.Y. 2002) (state court litigant permitted to "commence an APA action by miscellaneous motion").

[2] Unless otherwise noted, all citations and internal quotation marks are omitted and all emphasis is added.  Petitioner understands that the Federal Reserve may supplement the record identified in the Jeremy Robinson Declaration (hereinafter, "Ex. _"), to include additional documents it compiled when it made its decision.

and UBS settled Federal Reserve charges by agreeing to pay a $268.5 million fine and entering a

Consent Order charging Credit Suisse with serious risk management failures, including that:

> "examinations conducted by the [Federal Reserve] of the U.S. Operations prior to June 2023 [had] ***longstanding deficiencies*** in U.S. Operations' risk management, including but not limited to, counterparty credit risk management, liquidity risk management, model risk management, third party risk management, and information technology management, as well as significant data management and data quality issues."[3]

Defendants in the NY Action have substantially completed their document production in the NY

Action, except for documents from Switzerland pursuant to letters rogatory and documents

concerning personal jurisdiction for certain defendants.  Petitioner has taken 11 depositions and

is scheduled to take an additional 18 depositions in the coming months.  Under the current

scheduling order, the parties will be trial ready during the fall of 2024.

On behalf of the Federal Reserve, Defendants have withheld bank examination reports,

interview transcripts, and hundreds of documents (comprising almost entirely of *internal* Credit

Suisse communications) from production to Petitioner (collectively the "Withheld Information").

The Federal Reserve sweepingly claims that this information is exempt from disclosure based on

the bank examination privilege ("BEP") and law enforcement privilege ("LEP").

The Federal Reserve cannot support its heavy burden to establish privilege.  It has

provided only conclusory support based on an incorrect legal standard and insufficient review.

Based on a review of just 4% of the documents withheld by Credit Suisse, the Federal Reserve

claims that all the Withheld Information constitutes BEP because it consists of (i)

"communications between Credit Suisse and its supervisors," or (ii) "internal Credit Suisse emails

or documents which contain or would reveal" information designated as confidential by the

---

[3] Ex. A at Ex. E at 2.

Federal Reserve.  Ex. K at 9.  These criteria are patently wrong.  The BEP applies **only** to the agency's privileged "analyses, opinions and recommendations," *Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 450 (E.D.N.Y. 1993); *infra* § I, and does not extend to information that is "primarily factual in nature."  *Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993). It is well-established, for example, that bank examination reports are largely factual and, thus, must be produced.  *See, e.g.*, *Wultz v. Bank of China Ltd.*, 61 F.Supp.3d 272, 287–88 (S.D.N.Y. 2013) ("*Wultz I*").  The Federal Reserve likewise failed to properly assert the LEP and, again, applied overly broad criteria that runs contrary to well-established legal precedent.  *Infra* §II.

　　　　There is also good cause to override the Federal Reserve's BEP and LEP assertions.  The Withheld Information is highly relevant to show that the Federal Reserve had long put the Defendants on notice of serious risk management deficiencies that remained unremedied, causing billions in losses and the shuttering of Credit Suisse's NY-based prime brokerage service. ███ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████, yet Defendants left these issues were left to fester until they led to the Bank's losses in 2020 and 2021.

　　　　Petitioner comes to this Court as a last resort, after having spent many months attempting to obtain disclosure of the Withheld Information through correspondence with the Federal Reserve and Defendants.  The Federal Reserve has refused to consent to the jurisdiction of New York Supreme Court overseeing the NY Action, insisting that Petitioner seek relief in this Court instead.

　　　　Accordingly, and for the following reasons, Petitioner seeks a declaration that Federal Reserve's bank examination reports and the transcripts of testimony and documents identified in

Ex. B are not privileged or, in the alternative, that the Court should exercise its discretion to override the privilege.

## BACKGROUND

### I.    The NY Action

In 2022, Petitioner brought a stockholder derivative action New York Supreme Court, Commercial Division, captioned: *Emps. Ret. Sys. for the City of Providence v. Urs Rohner et al.*, Case No. 651657/2022 (N.Y. Sup. Ct.).  The NY Action asserts claims for breaches of fiduciary duty under Swiss law against Credit Suisse's former directors and officers stemming from their failure to establish and oversee reasonable risk management controls for Credit Suisse's New York-based equities trading business.  Ex. A at Ex. C at ¶2.  These failures caused the Bank billions of dollars in losses, including from deficient risk management practices leading to losses from the collapse of bank clients Malachite in March 2020 and Greensill and Archegos in March 2021.  Credit Suisse's risk management controls for Prime Services, a division of Credit Suisse's New York-based investment bank, were so deficient that the Bank had to shut the entire business down in November 2021 rather than remedy the deficiencies.  *Id*. at ¶2.  In March 2023, Swiss authorities forced UBS to buy Credit Suisse in a stock-for-stock merger when the entire Bank appeared to be at risk of collapse (the "Forced Merger").[4]

On January 30, 2023, Justice Masley denied Defendants' motion to dismiss and the NY Action proceeded into fact discovery.[5]  Petitioner served discovery requests.  Ex. A at Ex. D.  Fact discovery is ongoing.[6]

---

[4] Ex. A at Ex. E at 4-5.

[5]  Ex. A at 3.

[6] *Id*.

II.    **The Federal Reserve Found Serious Risk Failures At Credit Suisse**

The Federal Reserve served as Credit Suisse's primary banking regulator in the U.S.  In

2012, ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████  In July 2023, the

Federal Reserve entered a consent order with UBS (Credit Suisse's successor), and certain former

Credit Suisse subsidiaries (the "Consent Order").

The Consent Order addressed the same or similar risk management failures addressed in

the ████████ and at issue in the NY Action.  Ex. A at Ex. C, E.  For example, UBS admitted in

the Consent Order that:

- "[E]xaminations conducted by the Federal Reserve … of the U.S. Operations prior to June 2023 *identified longstanding deficiencies in the U.S. Operations' risk management*, including, but not limited to, counterparty credit risk management, liquidity risk management, model risk management, third party risk management, and information technology management, as well as significant data management and data quality issues"; and

- "Credit Suisse, including but not limited to Credit Risk Management and Prime Services Risk, lacked adequate governance, experienced staff with sufficient stature, and sufficient data quality and model risk management to ensure that activities conducted with counterparties were properly risk managed."

Ex. A. at Ex. E at 2, 4.  Whether Defendants—*i.e.*, certain former Credit Suisse Directors and

Officers—knew about these ongoing risk management deficiencies ████████████████

████ and the reasons the Bank failed to remedy those issues are factual disputes at the heart of

the NY Action.

III.    **Credit Suisse Withheld Materials As Privileged For The Federal Reserve**

In response to Petitioner's document requests, Credit Suisse withheld or redacted as

privileged thousands of documents on the grounds that they constitute confidential supervisory

information ("CSI") and BEP belonging to the Federal Reserve.  Ex. B.  Credit Suisse asserted privilege on behalf of the Federal Reserve for 961 documents and withheld in entirety the vast majority, *i.e.*, 775, of those documents with the remainder redacted.

After extensive discussions between the parties, Credit Suisse produced a log of the withheld information.  The log provided very limited information about the withheld information and, beyond merely identifying the privilege being asserted, did not describe or justify the basis for the assertion of privilege or the nature of the withheld documents.

Petitioner studied the log provided by Credit Suisse and, despite the limited information, was able to group the documents into three primary categories (see Ex. B):

(1)    **"Transcripts" tab**: listing transcripts of interviews conducted by the Federal Reserve (10 transcripts);

(2)    **"Fed Only" tab**: listing documents containing information withheld on behalf of the Federal Reserve (578 documents); and

(3)    **"Fed & Other Agencies" tab**: listing documents containing information withheld on behalf of the Federal Reserve and at least one other US or foreign regulator (373 documents).

### IV.    Petitioner Exhausted Administrative Remedies By Making A Touhy Request, Which the Federal Reserve Denied Without Reviewing All Documents

On February 20, 2024, Petitioner sent a *Touhy* request letter to the Federal Reserve requesting that it allow the disclosure of the Withheld Information.[7]  Ex. A at 1.  Petitioner requested that the Federal Reserve respond by March 19, 2024.  *Id.* at 10.

In its request, Petitioner explained that the Withheld Information comprised factual information and nonprivileged internal bank business communications and was thus not privileged.  *Id.* at 5-7.  In support, Petitioner explained:

---

[7] Requests to agencies for records, testimony, or other purportedly confidential information pursuant to the federal "housekeeping" statute, 5 U.S.C. § 301, are referred to as "*Touhy* requests."  *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  A denial of a *Touhy* request is challengeable under the APA.  *Wultz I*, 61 F. Supp. 3d at 280.

- ***First***, the vast majority of the documents, including the interview transcripts, were improperly withheld in full, with no attempt to segregate and produce factual information. *Id.* at 5, 6.

- ***Second***, almost all of the withheld communications—955 out of 961—were non-privileged, internal Credit Suisse business communications that did not include the Federal Reserve or any regulator whatsoever, as evidenced by Credit Suisse's privilege log and versions of documents produced without redactions. *Id.* at 5.

- ***Third***, counsel for Credit Suisse had conceded that it had withheld more than just the Federal Reserve's opinions and recommendations. *Id.* at 7.

Petitioner also set forth good cause supporting disclosure of the Withheld Information, as set forth under Federal Reserve regulation 12 C.F.R. § 261.23(b)(2). Petitioner explained that:

- The Withheld Information is highly relevant to Petitioners' claims that Credit Suisse officers and directors were negligent in their oversight of risk management at the Bank, particularly as to red flags that the Bank's risk controls were deficient. *Id.* at 7.

- The information about the Federal Reserve's inquiry into and identification of deficient risk controls at Credit Suisse could not be obtained from other sources absent the withdrawal of the privilege. *Id.* at 8.

- A protective order entered in the litigation would preserve the confidentiality of the information. *Id.*

- The seriousness of the litigation weighted in favor of disclosure because the default of the hedge fund Archegos resulted in Credit Suisse (and thus its stockholders) losing billions of dollars, forced Credit Suisse to shut down its entire New York-based prime services business, and contributed to the near collapse of the Bank and the Forced Merger. *Id.* at 8-9.

- The role of the Federal Reserve in identifying risk management failures at Credit Suisse and the Defendants' obligations to act in response to the Federal Reserve support disclosure. *Id.* at 9.

- There is minimal risk that disclosure will have a chilling effect on the bank because Credit Suisse had shut down its prime services business and subsequently merged with UBS. *Id.* at 10.

On April 3, the Federal Reserve responded that its staff were reviewing the request and requested that Credit Suisse explain why the information is privileged and to provide a statement regarding the factors for good cause to override the privilege. Ex. F at 1-2.

On April 5, Petitioner informed the Federal Reserve that, given its failure to provide a timely response, Petitioner intended to seek the assistance of the New York Supreme Court where the NY Action was pending.  Ex. G.

On April 9, the Federal Reserve responded that, under the Supremacy Clause and federal law, the issues raised in Petitioners' Touhy request could be adjudicated only in federal court. According to the Federal Reserve, the issues could not be addressed in state court because a state court order "to compel production of [BEP] absent express written permission from the [Federal Reserve's] General Counsel under its *Touhy* regulations would violate the Supremacy Clause and federal law and run counter to the principles of sovereign immunity[,] just as a federal agency itself is immune from an order of a state court requiring production."  Ex. H at 6.  The Federal Reserve further asserted that Petitioner litigating the issue of BEP in state court "raises the likelihood that the Board would seek to intervene and remove [the] action, in whole or in part, to federal court under 28 U.S.C. §§ 1441 et seq."  *Id.*

On April 25, Credit Suisse submitted the information requested by the Federal Reserve. Ex. I.  On April 28, Petitioner requested that the Federal Reserve produce bank examination and other supervisory reports for Credit Suisse or its investment bank during the period from 2018 through 2022.  Ex. D.  On May 17, Petitioner responded to Credit Suisse's letter.  Ex. J.

On May 29, the Federal Reserve formally denied Petitioner's *Touhy* request, asserting privilege over and refusing to allow Credit Suisse to release any of the Withheld Information.  Ex. K.  It reached this sweeping conclusion based on a review of just 4% of the challenged documents, consisting of two witness interview transcripts and 38 withheld Credit Suisse documents and communications. Of these, 13 documents were selected by Credit Suisse, which, unlike Petitioner, has access to all the Withheld Information.  *Id.* at 8 & n.5.

The Federal Reserve claimed that privilege protected all the Withheld Information. As to the interview transcripts, the Federal Reserve made the conclusory assertion that they were protected from disclosure under both BEP and LEP, because (i) they were "investigative communications between the [Federal Reserve] and Credit Suisse … concerning possible violations of law, regulation, or unsafe or unsound banking practices" and (ii) "the particular questions and lines of inquiry by the [Federal Reserve] may show areas of an [unidentified] ongoing investigation." *Id*. at 8. As to the internal Credit Suisse communications and documents, the Federal Reserve asserted BEP on the grounds that they concerned the Federal Reserve's "supervisory or investigative requests, directions, or communications (or those of other regulators)" and "Credit Suisse's responses to those inquiries." *Id.* at 9.

The Federal Reserve also concluded that Petitioner did not show a substantial need for disclosure of the Withheld Information that outweighed the Federal Reserve's need for continued confidentiality. *Id*. at 10-11.

## JURISDICTION AND VENUE

This Court has federal question jurisdiction under 28 U.S.C. § 1331. A state-court litigant, such as Petitioner, may file a miscellaneous motion in federal court to obtain discovery from a federal government agency pursuant to the APA. 5 U.S.C. §702 *et seq.*; *Meisel v. F.B.I.*, 204 F.Supp.2d 684, 688 (S.D.N.Y. 2002) (federal question jurisdiction where "a party to a pending [state] litigation … seeks discovery from an agent of the government" via miscellaneous motion); *see also E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 599 (2d Cir. 1999) (new action not required when seeking discovery under the APA); *Niagara Falls Bridge Commission v. The United States Department of Homeland Security et al.*, Docket No. 1:09-mc-00041, ECF No. 13 (W.D.N.Y. Jun 19, 2009) (granting miscellaneous motion to compel disclosure from federal agency).

The issues are ripe.  In its May 29, 2024 denial of Petitioner's *Touhy* request, the Federal Reserve made its final determination that (1) the Withheld Information is protected from disclosure under the BEP and LEP; and (2) denied Petitioner's request for access to the withheld information.  Ex. K at 8, 10; *see Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Venue is proper.  Venue is appropriate in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C.A. § 1391.  The at-issue witness and communications largely occurred in New York.  *See* Ex. B at 2, 179 at Log Nos. 2436-2437 (withholding transcripts and communications involving New York-based employees, *e.g.*, NY Action defendant Brian Chin).  And the Federal Reserve's denial of Petitioner's *Touhy* request directly impacts the NY Action pending in New York.  *See Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F.Supp.2d 36, 39-40 (D.D.C. 2010) (venue appropriate in an APA action in the location of the impact of the agency's decision); *see also Rhoads v. U.S. Dep't of Veterans Affs.*, 242 F.Supp.3d 985, 989-90 (E.D. Cal. 2017) (APA action arising from state court litigation properly brought in same district state court was located).

## ARGUMENT

### I.  Legal Standard

The APA requires reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be," among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. § 706(2)(A), (C).  "[T]he district court essentially sits as an appellate tribunal, reviewing the administrative record compiled by that agency when it made the decision[.]"  *Saleh v. Blinken*, 2023 WL 5091819, at *1 (2d Cir. Aug. 9, 2023); *see also Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (for review under the APA, "[t]he 'entire case' on review is a question of law").  "It is generally acceptable for the district

court to style such determinations as ones for summary judgment[.]"  *Saleh*, 2023 WL 5091819, at *1.

The Court's review is subject to a *de novo* standard.  *See Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 229 (2d Cir. 2020) (pursuant to Section 706 of the APA, the district court "review[s] *de novo* all relevant questions of law").   "[T]he decision whether to uphold [an agency's] claim [of privilege] rests always with the Court, after balancing all the various interests."  *Kinoy v. Mitchell*, 67 F.R.D. 1, 11 (S.D.N.Y. 1975); *see also Comm. for Nuclear Resp., Inc. v. Seaborg*, 463 F.2d 788, 793-94 (D.C. Cir. 1971); *In re Packaged Ice Antitrust Litig.*, 2011 WL 1790189, at *3 (E.D. Mich. May 10, 2011) (agency regulations "cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged").

Agency regulations do not confer privilege.  *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 150 (2d Cir. 1968) (agency has no power to create privilege); *Seaborg*, 463 F.2d at 793-94; *Merchants Bank v. Vescio*, 205 B.R. 37, 41 (D. Vt. 1997) ("[N]o privilege or exemption from discovery arises out of the federal regulations in question.").   Federal Reserve regulations set forth an expansive list of information that the Federal Reserve requires be keep confidential, referred to as "Confidential Supervisory Information" or "CSI."   12 C.F.R. § 261 *et. seq*.   When a bank or agency withholds information as CSI, the relevant inquiry is not whether the information is CSI but, instead, whether the information is privileged.  *See King v. Habib Bank Ltd.*, 2023 WL 8879170, at *2 (S.D.N.Y. Dec. 22, 2023) ("The relevant inquiry is not … whether the documents … contain CSI, but whether there is a basis for [the] Court to order … [their production] in discovery notwithstanding their confidential status.").

The agency asserting the privilege bears the "burden of establishing its applicability to the documents at issue." *Wultz I*, 61 F.Supp.3d at 282 (quoting *Schreiber*, 11 F.3d at 220); *see also In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010). Here, the Federal Reserve asserts BEP and LEP. Both are qualified privileges that may be overridden if the requesting party demonstrates good cause. *Wultz I*, 61 F.Supp.3d at 282 (BEP); *see In re The City of New York*, 607 F.3d at 945 (LEP).

For the reasons below, the Federal Reserve cannot meet its burden to show that the Withheld Information is privileged. Even if it could, good cause exists to override the privilege.

## II.    The Withheld Information Is Not Privileged

Petitioner challenges the Federal Reserve's privilege assertions over the Withheld Information, consisting of 10 interview transcripts, 951 communications (including attachments), and bank examination reports. The Federal Reserve applied patently overboard privilege criteria that cannot withstand review and cannot satisfy its burden to justify the privilege. The available evidence, consisting of Credit Suisse's privilege log (*i.e.*, Ex. B) and unredacted versions of the challenged documents themselves, demonstrate that the Withheld Information constitutes factual information.

### A.    Bank Examination Reports Should Be Produced

The Federal Reserve wrongly asserts privilege over entire bank examination reports for Credit Suisse for the period January 1, 2016, through December 31, 2022. The Federal Reserve denied Petitioner's request for disclosure of bank examination reports without support or discussion. Ex. K at 5.

It is well-established that bank examination reports are factual, at least in part. Indeed, "[e]very court that has examined the nature of bank examination reports thus far has found them to be at least partly factual." *See, e.g.*, *Wultz I*, 61 F.Supp.3d at 287-88; *see also Principe*, 149

F.R.D. at 448 (finding as a matter of law bank examination reports to be factual either in whole or in part); *In re Franklin Nat. Bank Sec. Litig.*, 478 F.Supp. 577, 585 (E.D.N.Y. 1979) (explaining the distinction between factual information and opinions and recommendations).  Despite this clear authority, the Federal Reserve asserts privilege over the entirety of the reports without explanation.  Accordingly, the Court should order the bank examination reports should be disclosed or, at a minimum,  the factual portions should be disclosed.

### B.    The Withheld Internal Bank Communications Do Not Constitute BEP

The Federal Reserve improperly asserts privilege over 951 Credit Suisse communications that are internal to the Bank.  The Federal Reserve's assertion of privilege over these communications is wrong for two independent reasons.  *First*, it is premised on the improper contention that information that falls within the agency's definition of CSI satisfies the standard for BEP.  Numerous courts have considered and rejected this argument and, instead, require a showing of BEP independent of CSI.  *Second*, the Federal Reserve cannot substantiate its burden, as it provided only conclusory statements and a skeletal privilege log compiled by Credit Suisse. Applying the correct standard, Credit Suisse's internal communications are factual and should be produced.

### 1.    The Federal Reserve Applied An Incorrect Standard For BEP

The Federal Reserve cannot sustain its burden because it applied improper criteria for BEP.  Ex. K at 9-10.  It is settled law that BEP protects only "agency opinions and recommendations and banks' responses thereto."  *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *6 (Nov. 16, 2016); *In re Bankers Tr. Co.*, 61 F.3d 465, 471 6th Cir. 1995).[8]  Bank documents "discussing, describing, or relating to bank examinations, examination

---

[8] Some courts have phrased the standard as the agency having the burden of demonstrating "that the materials are deliberative rather than factual."  *In re Citigroup Bond Litig.*, 2011 WL 8210671, at *1 (S.D.N.Y. Dec. 5, 2011); *see*

findings, or other supervisory matters … are ***primarily factual*** and therefore not subject to the bank examination privilege." *See, e.g.*, *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2022 WL 3567340, at *20 (M.D. Pa. Aug. 18, 2022).

The Federal Reserve withholds communications consisting almost entirely of internal Credit Suisse business communications. Indeed, of the 951 challenged communications, ***945 or over 99.3% of them are purely internal bank communications that do not involve any regulator***. These purely internal Credit Suisse communications undoubtedly "discuss[], describe[e], or relat[e] to bank examinations, examination findings, or other supervisory matters," making them "primarily factual and therefore not subject to the bank examination privilege." *See Orrstown*, 2022 WL 3567340, at *20. The 6 withheld documents that do include communications with the Federal Reserve are equally factual and not privileged.[9]

The Federal Reserve cannot carry its burden. *See Wultz I*, 61 F.Supp.3d at 282. It vaguely contends that the 945 internal Credit Suisse communications constitute BEP because they contain (i) "communications between Credit Suisse and its supervisors," or (ii) "internal Credit Suisse emails or documents which contain or would reveal CSI."[10] *Id.* at 9. These BEP criteria are

---

*also King*, 2023 WL 8879170, at *2. Consistent with the above standard, courts find that information is deliberative if it contains the Federal Reserve's "analyses, opinions and recommendations." *See Principe*, 149 F.R.D. at 450; *see also In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 26–27 (D.D.C. 2004) (information is "purely deliberative" if it contains "only opinions, recommendations or conclusions").

[9] Ex. B at 121 at Log No. 293, 122 at Log No. 297, 51 at Log Nos. 466 and 467, 52 at Log No. 469, 137 at Log No. 1100. The Federal Reserve has likewise not satisfied its burden to establish that the fully withheld 6 communications between Credit Suisse and the Federal Reserve are privileged. Communications between the Federal Reserve and Credit Suisse will necessarily contain factual information not subject to the bank examination privilege. *In re Wilmington Tr. Sec. Litig.*, 2016 WL 9753979, at *6 (D. Del. Aug. 16, 2016). To the extent these documents contain factual information, disclosure will not "intrude on the internal, deliberative decision-making processes of government." *See Principe*, 149 F.R.D. at 450.

[10] The Federal Reserve also contends that the Withheld Information is subject to withholding because it "includes documents produced to the Federal Reserve in response to supervisory or investigative requests." Ex. K at 9. This position makes little sense, as Credit Suisse produced unredacted versions of the documents that it previously produced to the Federal Reserve. *See generally*, Ex. B (citing Bates numbers of the documents produced to the Federal Reserve and the Bates numbers of the redacted version produced to Petitioner).

patently improper, extending far beyond the Federal Reserve's "analyses, opinions and recommendations." *See Principe,* 149 F.R.D. at 450.

Indeed, numerous courts have rejected the privilege criteria apparently applied by the Federal Reserve.  For example, in *In re Vescio*, the court held that (i) a memorandum of understanding between the bank and the Federal Reserve; (ii) Federal Reserve inspection reports; and (iii) communications between the Federal Reserve and bank describing the bank's compliance and efforts to comply with the memorandum of understanding and inspections were not privileged.  208 B.R. 122, 128 (Bankr. D. Vt. 1997).  Likewise, in *Orrstown Financial Services, Inc.*, the court held that both (i) "formal and informal communications between the [regulator and bank] relating to bank examination or supervisory matters" and (ii) "internal [bank] documents or emails discussing, describing, or relating to bank examinations, examination findings, or other supervisory matters" consisted, at least in part, of factual information.  2022 WL 3567340, at *20.  And in *Wultz I*, this Court rejected a similarly broad definition of BEP, holding that a bank's internal communications, including "periodic risk reports, self-analyses of [the bank's] compliance systems, proposed actions and changes to compliance procedures, and other communications" that were "submit[ted] to the OCC," were not protected from disclosure as BEP ***unless*** they addressed the OCC's opinions and recommendations, referred to as matters requiring attention.[11]  61 F.Supp.3d 272, 285, 287 (S.D.N.Y. 2013).  Here, in contrast, the Federal Reserve has not demonstrated that its privilege assertions comprise of its opinions or recommendations.

---

[11] *See Understanding Federal Reserve Supervision*, Federal Reserve (explaining Matters Requiring Attention), https://www.federalreserve.gov/supervisionreg/how-federal-reserve-supervisors-do-their-jobs.htm (last visited June 25, 2024).

The Federal Reserve's authorities are inapposite. Ex. K at 9-10. *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992) ("*Fleet*")—the Federal Reserve's principal authority—is contrary to the Federal Reserve's over-broad application of BEP. There, the D.C. Circuit adhered to the standard, cited above, that "[t]he bank examination privilege … shields from discovery ***only*** agency opinions or recommendations; it does not protect purely factual material." *Id.* at 634. Indeed, the D.C. Circuit upheld the district court's conclusion that portions of Federal Reserve "interview notes and memoranda are indeed factual." *Id.* at 635. Likewise, *In re B of I Holding Inc. Securities Litigation* stands for the unremarkable proposition that internal bank communications may reflect BEP. 2022 WL 507663, at *3-5 (S.D. Cal. Feb. 18, 2022). The *B of I* court conducted an in-camera review of internal bank communications withheld as privileged by the OCC and concluded many did ***not*** contain BEP-protected information. *Id.* at *3. *FHFA v. HSBC North America Holdings Inc.*, 2014 WL 1909446 (S.D.N.Y. May 13, 2014) is even farther afield. There, the FHFA invoked privilege over just four communications ***between*** the agency and bank, which Judge Cote reviewed *in camera*, finding that they reflected "agency opinions and recommendations." *Id.* at *3. Here, as noted, the overwhelming majority—more than 99%—of the challenged communications are ***internal bank communications*** not involving the Federal Reserve. Finally, *Linde v. Arab Bank, PLC*, does not concern withheld documents, as at issue here, but instead concerns the scope of questions that a bank officer could be asked at his deposition regarding questions posed to him by the OCC. 2009 WL 305528, *1-22 (E.D.N.Y. Sept. 21, 2009). Here, the challenged communications involve ***internal bank communications*** not involving the Federal Reserve. In any event, *Linde* is an outlier opinion because its broad interpretation of BEP goes against the weight of authority holding that inquiries from regulators are factual. *See, e.g.*, *Orrstown Fin. Servs., Inc.*, 2022 WL

3567340, at *20; *Wultz I*, 61 F.Supp.3d at 286-87; *In re Providian*, 222 F.R.D. at 27 ("[T]he fact that the [agency] looked at certain areas is not the same as revealing its conclusions or opinions regarding those areas" does not fall within the privilege).

In sum, the Federal Reserve cannot sustain its burden because it relied on an improper standard for BEP.

### 2. Conclusory Privilege Assertions Cannot Satisfy The Federal Reserve's Burden

The Federal Reserve also does not satisfy its burden because it does not even attempt to demonstrate—as it must—that each of the challenged documents is privileged. *See, e.g.*, *Wultz v. Bank of China Ltd.*, 291 F.R.D. 42, 46 (S.D.N.Y. 2013) ("*Wultz II*") (OCC failed to carry its burden to establish BEP where it "refuse[d] to assert the bank examination privilege with respect to specific documents."). In fact, the Federal Reserve's denial letter fails to reference the subject matter of a single communication, including for the 40 exemplar documents on which its unsupported conclusion was based. Ex. K at 8-10. Rather than establish why the BEP applies on a document-by-document basis—as was required—the Federal Reserve relies entirely on the conclusory, blanket assertion that "internal bank documents discussing supervisory requests and the bank's potential responses" are "protected from discovery under the bank examination privilege." *Id*. at 9. This is patently insufficient. *See Schreiber*, 11 F.3d at 221 (conclusory affidavit insufficient to establish BEP).

The scant information produced indicates that the challenged documents are not privileged. Indeed, Credit Suisse disclosed the file names of the 775 fully withheld Credit Suisse internal communications on a privilege log produced by Credit Suisse (Ex. B), which indicates that factual information was improperly withheld. For example, the file names evidence that the corresponding documents contain factual information like minutes of meetings and board

approvals.[12]  Other entries likewise indicate that the documents are factual, including discussions of Credit Suisse's internal efforts to address risk management deficiencies,[13] bank risk limits,[14] client updates,[15] meeting notes,[16] and the status of remediation efforts concerning the ███████ ██████████████████████████████████████.[17]  Or the logged document names reveal only meaningless information.[18]  Courts routinely reject such attempts to broadly withhold documents. *E.g.*, *In re Wilmington Tr. Sec. Litig.*, 2016 WL 9753979, at *5 (D. Del. Aug. 16, 2016) ("the withholding of ***entire documents*** containing any deliberative or other protected material" is not permissible).

Similarly, unredacted versions of documents with information withheld as BEP further confirm that the Federal Reserve is withholding factual information.  For example, Credit Suisse redacted an internal communication about preparing responses to questions from the Federal Reserve about the Bank's risk models.  Ex. B at 35 at No. 268, CS-FRB-00409842 (redacted information described as "email containing CSI belonging to the Federal Reserve").  But an unredacted version of this document confirms that the withheld information ***does not*** concern the

---

[12] *See, e.g.*, Ex. B at 9 at Log No. 50 ("04Nov20_***IB_CRC Minutes***v00.pdf"), 12 at Log. No. 89 ("***RE: Board RC and Board Approvals***"), & 87 at Log No. 1572 ("RE: March 30, 2021 and March 31, 2021 US LE ***Joint Board and RC Meetings Materials***").

[13] *See, e.g.*, Ex. B. at 33 at Log No. 241 ("Insufficient Data Quality and Internal Controls"), 207 ("***CRM Scenario Remediation***.pdf"), & 21 at Log No. 221 ("***R&C Committee: Focus Areas II***: Operational Risk Losses, Securitized Products and FRB Remediation Update (MRA List Below)").

[14] *See, e.g.*, Ex. B. at 10 at Log No. 67 ("CUSO CIB CRC_August ***Limits***.pptx") & 45 at Log No. 314 ("***Credit Risk Appetite Reporting*** Jan 2021 vF.pdf"); 71 at Log No. 1056 ("***Risk Limits Data***.xlsx").

[15] *See, e.g.*, Ex. B. at 15 at Log No. 104 ("***Counterparty Update*** Jan 2021 v00.pptx"), 42 at Log No. 279 ("***Counterparty Update*** Jan 2021 Follow-Ups v00.pptx"), 95 at Log No. 1776 ("***Counterparty Update*** November 2019 v2.pptx").

[16] *See, e.g.*, Ex. B. at 66 at Log No. 871 ("RE: FRBNY: Quarterly Counterparty Credit Risk Update ***Meeting – Notes***").

[17] *See, e.g.*, Ex. B at 73 at Log No. 1114 ("███████████████████████████████████████ ███████████████").

[18] *See, e.g.*, Ex. B at 72 at Log No. 1059 ("[Unnamed Spreadsheet]"), 37 at Log No. 272 ("EmbeddedFile1.docx"), 45 at 308 ("Microsoft_Excel_Worksheet.xlsx"), & 91 at Log No. 1744 ("Internal Credit Risk Documents.ppt").

Federal Reserve's opinions or recommendations and, instead, concerns the Federal Reserve making general requests for information.[19]  Such information is factual as it concerns the models used by Credit Suisse and whether there are "gaps" in its practices.  The cursory mention of the "Fed" does not change that reality.

The Federal Reserve even withheld administrative information such as Credit Suisse employees discussing when to schedule a call with the Federal Reserve.  *Compare* Ex. B at 55 at Log No. 492, CS-FRB-00240001 (redacted information described as "email containing CSI belonging to the Federal Reserve"), *with* Ex. M (unredacted version of Log No. 492, stating: ██

████████████████████████████████████████████████████

██████████████████████████).  Communications regarding administrative tasks are obviously beyond the boundaries of BEP.

Thus, the Court should order production of the withheld communications because the Federal Reserve has not sustained its burden to demonstrate BEP.

### C.    Interview Transcripts Are Not Privileged

The Federal Reserve also entirely withheld 10 transcripts of interviews with Credit Suisse employees following the collapse of the hedge fund Archegos.  Ex. B at 2 at Nos. 1159-68.  The Federal Reserve supports its decision on the grounds that the transcripts are entirely privileged under both the BEP and LEP.  Ex. K at 8-9.  Both arguments are meritless.

The Federal Reserve cannot establish that privilege supports fully withholding the transcripts without any attempt to delineate privileged and nonprivileged information.  Courts

---

[19] Ex. L (unredacted version of Log No. 268, stating: ██████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████).

routinely reject "the withholding of entire documents containing any deliberative or other protected material," and this Court should do the same. *See, e.g., Wilmington Tr.*, 2016 WL 9753979, at \*5.

### 1.    BEP Does Not Support Fully Withholding The Transcripts

The Federal Reserve has not satisfied its burden of establishing that the transcripts are entirely protected because of BEP.  Nor could it.  Courts routinely hold that interview notes and transcripts concern non-privileged factual information.  *See, e.g., In re Packaged Ice*, 2011 WL 1790189, at \*6 (overruling agency's denial of *Touhy* request because there was no reason to suspect "disclosure of the verbatim recordings" of "obvious persons of interest" "will reveal the DOJ's alleged investigation strategy"); *Fleet*, 967 F.2d at 635 (interview notes were factual).  In fact, some of the very same witnesses testified in the NY Action that they testified to the Federal Reserve about facts—not agency opinions or recommendations.  *See, e.g.,* Ex. A at Ex. F at Tr. 69:23-72:13 (Log No. 1162); Ex. A at Ex. G at Tr. 38:10-14 (Log No. 1163) (testifying that ███
████████████████████████████████████████████████████);
Ex. A at Ex. H at 86:20-87:15 (Log No. 1166).

In short, the examination interview transcripts are factual and thus should be disclosed.

### 2.    LEP Does Not Support Fully Withholding The Transcripts

Similarly, the Federal Reserve cannot satisfy its burden of showing that the LEP applies to the documents in question.  Invoking the LEP requires that the agency establish by affidavit: (1) "a formal claim of privilege by the head of the department having control over the requested information"; (2) an "assertion of the privilege based on actual personal consideration by that official"; and (3) "the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).

To support the third element and show that the privilege applies, the party asserting the privilege must demonstrate that the withheld information contains:

> (1) information pertaining to 'law enforcement techniques and procedures,' (2) information that would undermine 'the confidentiality of sources,' (3) information that would endanger 'witness and law enforcement personnel,' (4) information that would undermine 'the privacy of individuals involved in an investigation,' or (5) information that would seriously impair 'the ability of a law enforcement agency to conduct future investigations[.]'

*Id.*; *see also In re The City of New York*, 607 F.3d at 940-41 (discussing the purpose of LEP). "[M]ere recitations of the categories of information that the law enforcement privilege is designed to protect" fall short in providing the requisite detail necessary to establish that the privilege applies to a given set of information. *City of N.Y. v. FedEx Ground Packaging Sys., Inc.*, 2017 WL 4155410, at *4 (S.D.N.Y. Sept. 19, 2017). And "conclusory or *ipse dixit* assertions" are insufficient. *Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *4 (S.D.N.Y. May 23, 2016)).

### a. The Federal Reserve Has Not Properly Invoked LEP

The Federal Reserve has not properly invoked the LEP. ***First***, the Federal Reserve asserted the LEP by letter and without an affidavit establishing the privilege. *See United States v. Painting Known as "Le Marche"*, 2008 WL 2600659, at *1-3 (S.D.N.Y. June 25, 2008) (rejecting agency claim of privilege where no affidavit provided); *United States v. Wey*, 252 F.Supp.3d 237, 252 (S.D.N.Y. 2017) (same).

***Second***, the Federal Reserve official who signed the letter—Alye Foster, Associate General Counsel—is two levels below General Counsel, the head of the Federal Reserve's legal division[20] and cannot properly assert LEP on behalf of the Federal Reserve. *See, e.g., Alexander*

---

[20] Federal Reserve, Legal Division Organizational Chart as of January 1, 2024, https://www.federalreserve.gov/aboutthefed/files/legal-org-chart.pdf (last visited June 21, 2024).

*v. FBI*, 186 F.R.D. 154, 166 (D.D.C. 1999) (affidavits of FBI general counsel or inspector general could have been sufficient); *Moore v. Valder*, 2001 WL 37120629, at *9 (July 31, 2001) (rejecting claim of LEP asserted by a trial attorney).

**Third**, the privilege assertion was not based on the actual personal consideration of Ms. Foster or any more senior Federal Reserve official.  Instead, the Federal Reserve discloses only that unidentified "Board staff" reviewed just 2 of the 10 interview transcripts, meaning 8 of the requested interview transcripts were not even reviewed.  Ex. K at 8; *Wey*, 252 F.Supp.3d at 252 (S.D.N.Y. 2017) (rejecting privilege where no evidence of personal review).

**Fourth**, the Federal Reserve failed to provide a detailed specification of the information for which the privilege is claimed.  Instead, it offers the conclusory statement that the transcripts as a whole "concern[] possible violations of law, regulation, or unsafe or unsound banking practices … [and] the particular questions and lines of inquiry the [Federal Reserve] chose to pursue may show areas of an ongoing investigation by the Board."  Ex. K at 8.  This conclusory statement is insufficient to satisfy burden of showing that LEP applies.  *See Benn v. City of New York*, 2019 WL 4857339, at *3 (S.D.N.Y. Oct. 2, 2019).

In sum, the Federal Reserve has not properly asserted LEP.

### b.  The Federal Reserve Has Not Carried Its Burden to Establish LEP

Nor has the Federal Reserve carried its burden to show that the LEP applies in the first place.  To start, LEP does not apply because the Federal Reserve completed its investigation for which it transcribed the at-issue interviews when it entered the Consent Order with UBS.  *See In re Packaged Ice*, 2011 WL 1790189, at *7 (rejecting LEP where the "investigation has concluded, the identities of the cooperating witnesses are publicly known … and the records sought are the

tape recordings and verbatim transcripts of them which are factual in nature.").  At this juncture, there can be no remaining reason for asserting LEP.

Essentially conceding the weakness of its position, the Federal Reserve vaguely refers to an unspecified "ongoing investigation by the Board."  Ex. K at 8.  But conclusory, unsupported statements are insufficient.  *Benn*, 2019 WL 4857339, at *3; *Nunez v. City of New York*, 2023 WL 6850315, at *1 (S.D.N.Y. Oct. 17, 2023) (conclusory references to "chilling of cooperation" insufficient for LEP); *Coleman v. Cnty. Of Suffolk*, 174 F.Supp.3d 747, 757 (E.D.N.Y. 2016), *aff'd*, 685 F. App'x 69 (2d Cir. 2017) ("a restatement of the type of information the privilege is meant to protect" is insufficient).

Beyond these general statements the Federal Reserve does not even attempt to establish the elements for LEP.  Nor could it for numerous reasons:

*First*, it is not credible for the Federal Reserve to assert that every line of every transcript reveals law enforcement techniques and procedures.  *See S.E.C. v. Chakrapani*, 2010 WL 2605819, at *7 (S.D.N.Y. June 29, 2010) (finding LEP implausible because, among other reasons, the "information regarding government tactics and investigative strategies may be redacted from the documents"); *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 11 (D.D.C. 2010) (unlike "summaries of … interviews … that could reveal the investigators' interviewing techniques and evaluative process, as well as what the investigators found to be significant," verbatim transcripts are factual in nature).

*Second*, preserving the confidentiality of sources is not an issue, as the names of the interviewees have already been disclosed to Credit Suisse, Petitioner, and potentially others.  Ex. B at 2; *see Benn*, 2019 WL 4857339, at *3 (interview transcripts or video recordings not protected by LEP when the requesting party already knows the identity of the interviewee).

***Third***, the Federal Reserve has not claimed that disclosure would endanger witnesses and law enforcement personnel.

***Fourth***, disclosure does not undermine the privacy of the individuals involved in the investigation.  Petitioner does not seek personal identifying information, and any privacy concerns are addressed by the protective order entered in this case.  *See Sernoffsky v. San Diego Police Captain Novak*, 2024 WL 3100275, at *8 (S.D. Cal. June 21, 2024).

***Fifth***, the Federal Reserve's vague reference to an "ongoing investigation," Ex. K at 8, is insufficient to establish that disclosure would seriously impair its ability to conduct future investigations.  Numerous agencies have conducted investigations into the collapse of Archegos and Credit Suisse's risk management practices, resulting in publicly known settlements involving the Federal Reserve as well as foreign regulators, plus criminal charges against the founder and employees of Archegos.  Ex. A at Ex. C ¶ 22.  The Federal Reserve provides no information substantiating the scope of its purported ongoing investigation or how disclosure would impact that investigation. *See Chakrapani*, 2010 WL 2605819, at *6 (S.D.N.Y. June 29, 2010) (rejecting claim of harm to an ongoing investigation where the government had completed its investigation and pursued charges).

Accordingly, the Court should declare that the transcripts are not protected by LEP and may be disclosed.

### III.    Under line{There Is Good Cause To Override Privilege}

Even if the Court finds that the Withheld Information is privileged, it should override the privilege and declare that it should be produced.  The bank examination privilege is a qualified privilege that "may be defeated where necessary [i] to promote … having justice done between litigants … or [ii] in other circumstances when the public's interest in effective government would be furthered by disclosure." *Wultz I*, 61 F.Supp.3d at 282.  Courts have repeatedly found that

bank failures warrant disclosure of BEP.  *See, e.g.*, *Principe,* 149 F.R.D. at 449; *In re Franklin Nat. Bank*, 478 F.Supp. at 587.

> In determining whether good cause exists to override BEP, courts take into account:
>
> 1) the relevance of the evidence sought to be protected; 2) the availability of other evidence; 3) the 'seriousness' of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*In re Citigroup Bond Litig.*, 2011 WL 8210671, at *1-2 (S.D.N.Y. Dec. 5, 2011); *see also In re Franklin Nat. Bank*, 478 F.Supp. at 582; 12 C.F.R. § 261.23(b)(2).  The LEP is also a qualified privilege that can be overcome if (i) the information is sought for a non-frivolous suit brought in good faith; (ii) the information is important to the case, *i.e.*, the requesting party has a compelling need for the information, and (iii) the information sought is not available through discovery or other sources.  *In re The City of New York*, 607 F.3d at 945.  These factors mirror the BEP factors.

Here, as explained below, all five factors weigh in favor of overriding the BEP and LEP and ordering production of the Withheld Information.

**First**, the Withheld Information is highly relevant to Petitioner's claims.  The Federal Reserve erroneously asserts that the Withheld Information is irrelevant because (i) Petitioner does not specifically allege that the Federal Reserve failed to adequately supervise Credit Suisse; and (ii) the request is not limited to Archegos, Malachite, and Greensill, nor to information sent to, received by, or explicitly brought to the attention of the Defendants. Ex. K at 11-12.  Those criteria are improperly narrow:  "the relevance prong of the Court's good cause analysis is assessed pursuant to the ordinary standards of civil discovery, under which the standard of relevance is broadly construed."  *Orrstown Fin. Servs., Inc.*, 2022 WL 3567340, at *21.  All of the at-issue documents were identified by Credit Suisse as responsive to Petitioner's document requests, and thus are also relevant for purposes of Petitioner's Touhy request. Ex. A at 1-2, 7-8;

*see Orrstown Fin. Servs., Inc.*, 2022 WL 3567340, at *21 (documents produced by defendant satisfied the relevance criteria).

Further, the overlapping issues addressed in the Federal Reserve's ████████████ ████ and 2023 Consent Order are directly relevant to the NY Action.  For example, the Consent Order expressly found there were ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████ and that Credit Suisse failed to "take any effective measures to reduce the known risks posed by Archegos."  Ex. A at Ex. E at 2-4.  These findings bear directly on Petitioner's claims, as they concern the same risk management deficiencies alleged in Petitioner's complaint and the Defendants' awareness of those deficiencies.  *See, e.g.*, Ex. A at Ex. C at ¶244, ¶249.  Numerous courts have found relevance under similar circumstances.  *See Principe*, 149 F.R.D. at 449 (bank examination reports "relevant to the individual defendants' knowledge of [the company's] problems and the alleged … breach of fiduciary duty at issue"); *In re Franklin Nat. Bank*, 478 F.Supp. at 587 (bank examination reports relevant to whether "directors negligently managed the bank" and "fail[ed] to detect [control] weakness"); *Wilmington Tr.*, 2016 WL 9753979, at *7 (BEP information "indicative of Defendants' knowledge of the Bank's problems").

**Second**, the Withheld Information is direct evidence of the Federal Reserve's identification of risk management deficiencies and communication of those deficiencies within the Bank.  Courts have previously rejected similar agency assertions that "equivalent information adequate to the needs of the case" could be obtained from "other documents produced by Credit Suisse."  *Compare* Ex. K at 13-14, *with Wilmington Tr.*, 2016 WL 9753979, at *9 (alternate sources not available when BEP claimed over internal documents.); *see also In re Providian*, 222

F.R.D. 28-29 (alternative sources not available where "defendants and their auditor have refused to provide those records to plaintiffs under the instruction of the OCC").

**Third**, the seriousness and nature of the litigation weighs in favor of disclosure.  This case concerns serious oversight failures by the directors and officers of Credit Suisse, which resulted in billions of dollars of damages, let to the shut-down of the entire Prime Services business, and likely contributed to the near-collapse of the Bank and the Forced Merger.  There is a strong public interest in the causes for Credit Suisse's collapse, especially given its size:  before the Forced Merger, Credit Suisse was  one of 30 "Globally Systemically Important Bank[s]."[21] Courts have held that suits involving collapses of large banks present sufficient good cause to override the BEP.  *See, e.g.*, *In re Franklin Nat. Bank*, 478 F.Supp. at 587 (collapse of the US's 20th largest bank weighed for the seriousness of the litigation).  Indeed, the New York Appellate Division recently affirmed this Court's denial of Defendants' motion to dismiss, noting that "New York, as a preeminent commercial center, has a significant interest in adjudicating this dispute." *Emps. Ret. Sys. for City of Providence v. Rohner*, No. 1610, 2024 WL 479432 (N.Y. App. Div. Feb. 8, 2024).

Additionally, Credit Suisse's failure to remedy the deficiencies identified by the Federal Reserve, including in connection with the ▮▮▮▮▮▮▮, involve serious issues of public concern because they "raise fundamental issues regarding public confidence in the fairness of the financial markets."  *See Principe*, 149 F.R.D. at 449; *see also Orrstown Fin. Servs., Inc.*, 2022 WL 3567340, at \*25; *Wilmington Tr.*, 2016 WL 9753979, at \*9-10.

**Fourth**, the role of the government weighs for overriding the privilege.  While the Federal Reserve is not a party to the NY Action, significant overlap exists between the Federal Reserve's

---

[21] Ex. A at Ex. I.

regulatory duties, *e.g.*, identifying risk management deficiencies in the ███████ Consent Order, and Petitioner's allegations that Defendants negligently managed Credit Suisse risk.  As here, courts routinely find good cause to override the BEP where "private litigation is based upon claims that are related to the public interest and supplement government enforcement." *Orrstown Fin. Servs., Inc.*, 2022 WL 3567340, at *25; *see also Wultz I*, 61 F.Supp.3d at 290; *Principe*, 149 F.R.D. at 449 (role of the government weighs for disclosure where the "FDIC had regulatory duties with respect to [the company] and its collapse."); *In re Franklin Nat. Bank*, 478 F.Supp. at 587 (finding a "strong public interest" in disclosure "to fully air the story behind the bank's collapse and to help evaluate the adequacy of existing bank examination procedures.").

**Finally**, there is no reason to believe disclosure of the Withheld Information will have a chilling effect on relationships between the bank and regulators.  Credit Suisse was forced to merge with UBS in 2023.  *See Wilmington Tr.*, 2016 WL 9753979, at *11 ("no risk that disclosure will unduly undermine confidence in the Bank because the Bank has been closed for several years.").  Further, as courts have noted, banks are required by law to cooperate with regulators.  Any banks inclined not to fully disclosure information to regulators "would be no more likely to come forward if their communication with the examiner were privileged as opposed to merely confidential." *Seafirst Corp. v. Jenkins*, 644 F.Supp. 1160, 1164 (W.D. Wash. 1986).  In any event, the Protective Order entered by the court will alleviate any concerns regulators may have concerning any potential chilling effect of the disclosure. *See Wilmington Tr.*, 2016 WL 9753979, at *11; *Orrstown Fin. Servs., Inc.*, 2022 WL 3567340, at *25.

Accordingly, all five factors weigh in favor of this Court overriding the privilege.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court issue a declaration that the Withheld Information should be disclosed in the NY Action.

DATED:  July 25, 2024              Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

*/s/ Jeremy P. Robinson*
Jeroen van Kwawegen
Jeremy P. Robinson
Edward G. Timlin
Maria Nudelman
Eric J. Riedel
Stephen C. Boscolo
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400

*Counsel for Petitioner*