**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

EMPLOYEES RETIREMENT SYSTEM
FOR THE CITY OF PROVIDENCE,
derivatively as a shareholder of CREDIT
SUISSE GROUP AG on behalf of CREDIT
SUISSE GROUP AG,

                 Petitioner,

     v.

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,

              Respondent.

Misc. Case No. 24-mc-349 (AS)

**RESPONDENT BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S
COMBINED MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO PETITIONER'S MOTION FOR
SUMMARY JUDGMENT ON ADMINISTRATIVE PROCEDURE ACT REVIEW**

Joshua P. Chadwick
Senior Special Counsel
Yvonne Mizusawa
Senior Counsel
Monika Moore (*pro hac vice* pending)
Senior Counsel
Board of Governors of the
  Federal Reserve System
20th Street and Constitution Ave., N.W.
Washington, D.C. 20551
(202) 469-1007
yvonne.f.mizusawa@frb.gov

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 6

I.  The Board Decision Denying Petitioner's Request is Subject to Arbitrary and Capricious
    Review and Governed by Applicable Federal Regulations ................................................. 6

    A.  Standard on a Motion for Summary Judgment in an APA Action .......................... 6

    B.  Because Petitioner's Underlying Action Arose in State Court and Petitioner Seeks
        Review Under the APA, the Arbitrary and Capricious Standard Applies ............... 7

II.  The Board's Decision Properly Applied the Factors in Its Regulations and is Not
     Arbitrary or Capricious ..................................................................................................... 11

     A.  The Board's Regulations ....................................................................................... 11

     B.  The Board Determined that the Withheld Information is CSI
         Under Its Regulations ........................................................................................... 12

     C.  The Board Denied the February 20 Request Because It Determined that
         Petitioner Did Not Demonstrate Relevance of the Withheld Information to Issues
         or Matters Raised in the Underlying Litigation Outweighing the Need for
         Confidentiality ...................................................................................................... 18

     D.  The Board Denied the February 20 Request Because Equivalent
         Information Adequate to the Needs of the Case Is Available to Petitioner
         From Other Sources ............................................................................................... 22

     E.  The Board Denied the February 20 Request Based on Its Finding that
         Disclosure Was Not Consistent with the Supervisory and Regulatory
         Responsibilities and Policies of the Board Because Petitioner Sought Records
         Regarding an Ongoing Board Investigation ......................................................... 25

CONCLUSION .................................................................................................................... 28

# <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Adler v. DOJ*,
No. 18-cv-2188, 2018 WL 4571677 (S.D.N.Y. Sept. 24, 2018) ...................... 8, 10, 26, 27

*Battiste v. DOJ*,
No. 08-cv-1379, 2009 WL 3086429 (N.D.N.Y. Sept. 23, 2009)..................... 8, 10, 27, 28

*Camp v. Pitts*,
411 U.S. 138 (1973).................................................................................. 10, 25

*City of New York v. Shalala*,
34 F.3d 1161 (2d Cir. 1994).................................................................................. 21

*FHFA v. HSBC North America Holdings Inc.*,
11 Civ. 6189, 2014 WL 1909446 (S.D.N.Y. May 13, 2014)........................................... 15

*Fisher v. Pension Benefit Guaranty Corp.*,
468 F. Supp. 3d 7 (D.D.C. 2020) ....................................................................... 7

*Houston Business Journal, Inc. v. OCC*,
86 F.3d 1208 (D.C. Cir. 1996) ....................................................................... 9

*In re B of I Holding Inc. Securities Litigation*,
No. 15-cv-2324, 2022 WL 507663 (S.D. Cal. Feb. 18, 2022)................................... 14, 16

*In re Providian Financial Corp. Securities Litigation*,
222 F.R.D. 22 (D.D.C. 2004)....................................................................... 25

*In re Sealed Case*,
856 F.2d 268 (D.C. Cir. 1988) ................................................................. 26, 27

*In re SEC ex rel. Glotzer*,
374 F.3d 184 (2d Cir. 2004)....................................................................... 8

*In re Subpoena Served Upon the Comptroller of the Currency*,
967 F.2d 630 (D.C. Cir. 1992) ................................................................. 14

*Islander East Pipeline Co., LLC v. McCarthy*,
525 F.3d 141 (2d Cir. 2008)....................................................................... 10

*J. Andrew Lange, Inc. v. FAA*,
    208 F.3d 389 (2d Cir. 2000) ........................................................................ 10

*Jafarov v. United States Citizenship & Immigration Services*,
    No. 23 Civ. 3372, 2024 WL 69056 (S.D.N.Y. Jan. 5, 2024)........................... 6, 7, 10, 17

*King v. Habib Bank Ltd.*,
    2023 WL 8879170 (S.D.N.Y. Dec. 22, 2023) ................................................ 17

*New York v. Raimondo*,
    84 F.4th 102 (2d Cir. 2023) ....................................................................... 10, 16, 18

*New York v. U.S. Dep't of Health & Human Services*,
    414 F. Supp. 3d 475 (S.D.N.Y. 2019)......................................................... 6

*Portaleos v. Shannon*,
    No. 5:12-CV-1359, 2013 WL 4483075 (N.D.N.Y. Aug. 19, 2013)................. 9

*Prasco, LLC v. Medicis Pharmaceutical Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008)................................................................. 9

*Solomon v. Nassau Co.*,
    274 F.R.D. 455 (E.D.N.Y. 2011) ............................................................... 21

*Town of Southold v. Wheeler*,
    48 F.4th 67 (2d Cir. 2022) ........................................................................ 10, 14, 22, 26

*Tuite v. Henry*,
    181 F.R.D. 175 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999)............. 26

*Warner-Jenkinson Co. v. Allied Chemical Corp.*,
    567 F.2d 184 (2d Cir. 1977)...................................................................... 8

*Watsontown Trucking Co. v. DOL*,
    No. 16 CIV. 9166, 2018 WL 456300 (S.D.N.Y. Jan. 17, 2018).................... 8, 17, 21, 25

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) .................................................................. 8, 9

**Statutes**

5 U.S.C. § 552(b)(8) ......................................................................................... 7

5 U.S.C. § 702.................................................................................................. 8

5 U.S.C. § 702 et seq........................................................................................ 6, 9

5 U.S.C. §§ 701-706 ................................................................................................ 1

5 U.S.C. § 706 ....................................................................................................... 8

5 U.S.C. § 706(2) ................................................................................................... 1

5 U.S.C. § 706(2)(A) ........................................................................................ 10, 21

5 U.S.C. § 706(2)(C) ............................................................................................ 10

12 U.S.C. § 248(j) .................................................................................................. 7

12 U.S.C. § 326 ...................................................................................................... 7

12 U.S.C. § 1813(b) .............................................................................................. 26

12 U.S.C. § 1813(q)(3)(B) ..................................................................................... 2

12 U.S.C. § 1813(u) .............................................................................................. 26

12 U.S.C. § 1818(b) .............................................................................................. 26

12 U.S.C. § 1818(e) .............................................................................................. 26

12 U.S.C. § 1818(i) ............................................................................................... 26

12 U.S.C. § 3101(7) ................................................................................................ 2

28 U.S.C. § 2201 ............................................................................................ 6, 8, 9

**Regulations**

12 C.F.R. § 261.2(b) ............................................................................................... 1

12 C.F.R. § 261.2(b)(1) ........................................................... 7, 11, 12, 13, 14, 15

12 C.F.R. § 261.2(b)(2)(i) ..................................................................................... 12

12 C.F.R. § 261.20(a) .......................................................................................... 1, 3

12 C.F.R. § 261.23 ......................................................................................... 1, 3, 18

12 C.F.R. § 261.23(a) ............................................................................................. 3

12 C.F.R. § 261.23(a)(1) ........................................................................... 11, 18, 22

12 C.F.R. § 261.23(b)(2) ........................................................................................ 12

12 C.F.R. § 261.23(b)(2)(i) .................................................................................... 12

12 C.F.R. § 261.23(b)(2)(iv) ................................................................................. 19

12 C.F.R. § 261.23(b)(2)(v) ................................................................. 19, 22, 24, 27

12 C.F.R. § 261.23(d)(1) .......................................................................................... 5

12 C.F.R. § 261.23(d)(1)(i) .................................................................. 11, 15, 18, 22

12 C.F.R. § 261.23(d)(1)(ii) ....................................................................... 11, 18, 26

12 C.F.R. § 261.24 .............................................................................................. 1, 3

12 C.F.R. § 261.3(d) .............................................................................................. 17

12 C.F.R. § 263.454 ........................................................................................ 22, 27

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................... 6

**Other Authorities**

Board of Governors of the Federal Reserve System, Order to Cease and Desist and Order of
    Assessment of a Civil Money Penalty Issued Upon Consent Pursuant
    to the Federal Deposit Insurance Act, as Amended (July 21, 2023)
    https://www.federalreserve.gov/newsevents/pressreleases/files/enf20230724a1.pdf ........ 2

Federal Reserve Board, Press Release dated Apr. 14, 2023 (Order),
    https://www.federalreserve.gov/newsevents/pressreleases/orders20230414a.htm ........... 2

Letter from Bank of England to CEO of selected firms (Dec. 10, 2021),
    https://www.bankofengland.co.uk/-/media/boe/files/prudential-
    regulation/letter/2021/december/supervisory-review-global-equity-finance-
    businesses.pdf ................................................................................................ 24

Paul Weiss, Internal Investigations, *Credit Suisse Publishes Independent Review of
    Archegos Losses,* https://www.paulweiss.com/practices/litigation/internal-
    investigations/news/credit-suisse-publishes-independent-review-of-archegos-
    losses?id=40637 ......................................................................................... 23, 24

# INTRODUCTION

Pursuant to the Court's August 12, 2024 Order (ECF 12), respondent Board of Governors of the Federal Reserve System ("Board") cross moves for summary judgment and opposes petitioner Employees Retirement System for the City of Providence's ("Petitioner's") July 25, 2024 Motion for Summary Judgment (ECF 4) ("Motion") in this miscellaneous action under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"). As set forth below, the Board's May 29, 2024 final decision denying Petitioner's request to access Board confidential supervisory information ("CSI") for use in state court litigation was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA, 5 U.S.C. § 706(2), and the Board's governing regulations, 12 C.F.R. §§ 261.2(b), .20(a), .23 and .24 ("Regulations"). *See* Exh. K to Robinson Affirmation ("Robinson Aff.") (ECF 8-8) ("May 29 Decision" or "Board Decision"). Rather, the Board carefully considered the factors in its Regulations, relied upon the parties' submissions and exemplars of the withheld documents, and articulated a reasoned explanation for its May 29 Decision. Petitioner invokes this Court's jurisdiction solely under the APA and concedes that its arbitrary and capricious standard applies. *See* Motion at 1; Memorandum of Law in Support of Petitioner's Motion (ECF 5) ("Pet. Br.") at 10. Petitioner nevertheless erroneously argues that this Court should apply ordinary civil discovery standards applicable to cases originating in federal court. *See, e.g.,* Pet. Br. at 2 (arguing that the Board has a "heavy burden"). But federal discovery rules do not apply in this APA challenge to a federal agency's decision arising out of state court litigation, and Petitioner bears the burden to establish an APA violation. *See infra* at 7-10. Because the Board's Decision was not arbitrary or capricious, and was entirely consistent with its legal obligations, summary judgment should be granted for the Board and Petitioner's Motion should be denied.

1

## BACKGROUND

The Board is a federal banking agency authorized to examine and supervise foreign banking organizations doing business in the United States. 12 U.S.C. §§ 1813(q)(3)(B), 3101(7). Credit Suisse AG, Zurich, Switzerland ("Credit Suisse") was a foreign bank as defined in the International Banking Act, 12 U.S.C. § 3101(7), which conducted U.S. operations through Credit Suisse Holdings (USA), Inc., New York, NY ("CS USA"), and its New York State licensed branch (the "Branch"). By order dated April 14, 2023, the Board approved the acquisition of Credit Suisse's U.S. subsidiaries by UBS Group AG, of Zurich, Switzerland ("UBS").[1] On July 21, 2023, the Board entered into a public Consent Cease and Desist Order (the "Consent Order") with Credit Suisse, CS USA, and the Branch stemming from credit risk management and other deficiencies identified during examinations of its U.S. operations by the Federal Reserve Bank of New York under Board-delegated authority.[2]

On April 26, 2022, Petitioner filed a shareholder derivative complaint against officers and directors of Credit Suisse (the "Individual Defendants") and nominal defendant Credit Suisse (collectively, "Defendants") in New York Superior Court. Robinson Aff., Exh. A, Exh. C (ECF 6-1 at 24-87) ("Complaint"). The Complaint alleges that Credit Suisse's board of directors "inexcusably failed to adopt and implement [effective] internal risk management systems and controls" relating to its Prime Brokerage and Financing business ("Prime Services") at its New York-based investment bank ("IB"), which had been recently shut down following "several well-publicized hedge fund failures that caused billions of dollars of losses for" Credit Suisse. *Id.* ¶¶ 1-3. Those failures included the March 2021 collapse of Archegos Capital Management LP

---

[1] *Available at* https://www.federalreserve.gov/newsevents/pressreleases/orders20230414a.htm.
[2] *Available at* https://www.federalreserve.gov/newsevents/pressreleases/files/enf20230724a1.pdf.

("Archegos"), *id.* ¶¶ 15, 210, 234, a March 2021 default by Greensill Capital ("Greensill"), and a March 2020 default by Malachite Capital Management ("Malachite"). *Id.* ¶¶ 211-17, 141-50.

On February 2, 2023, Petitioner served Credit Suisse with its First Request for Production of Documents, Robinson Aff., Exh. A, Exh. D (ECF 6-1) at 88-116 ("Document Request"), in the underlying state court action. The Document Request contained 75 separate requests, including a broad Request 4 for "all" documents and communications "provided to and/or received from any [federal government agency] concerning the Prime Services Business" from January 1, 2016 through the date of production. *Id*. (ECF 6-1) at 104 (Request 4). Thereafter, Credit Suisse sent Petitioner a privilege log withholding certain documents containing Board CSI[3] under the Board's Regulations, as well as confidential information of other U.S. and foreign banking regulators. Robinson Aff., Exh. B (ECF 7) (the "CSI Log"). Beginning in March 2023, Credit Suisse explained to Petitioner that, under the Board's Regulations, it was precluded from disclosing the Board's CSI to a party in litigation without the prior, express written permission of the Board, which Petitioner had not requested or received. Robinson Aff., Exh. I (ECF 8-6) at 2-3. Rather than filing a request for CSI at that juncture, Petitioner "responded by threatening to seek a Court order compelling the production of withheld CSI materials." *Id.* at 3.

Ultimately, on February 20, 2024, Petitioner sent the Board a request for access to CSI under its Regulations. Robinson Aff., Exh. A (ECF 6-1) (the "February 20 Request" or "Request"). The Request conveyed the details of the underlying litigation and attached a copy of the Complaint, Document Requests, protective order, and CSI Log, among other information.

---

[3] The Board's Regulations provide that CSI is "confidential and privileged," 12 C.F.R. § 261.23(a), and require a supervised financial institution such as Credit Suisse lawfully in possession of CSI to withhold that information in response to discovery requests unless the requester obtains the Board's permission to access that information. *Id*. §§ .20(a), .23, .24.

*Id.*, Exhs. B-I; Robinson Aff., Exh. B (ECF 7). The Request stated that Petitioner sought access to three categories of Board CSI: (1) ten transcripts of interviews conducted by the Federal Reserve in its capacity as Credit Suisse's supervisor; (2) 578 full documents containing Board CSI; and (3) portions of 373 documents containing Board CSI. *Id.* at 4 (collectively, the "Withheld Information"). Petitioner stated that the Withheld Information was relevant to its underlying state court action because the documents "concern[] deficiencies in Credit [Suisse's] risk management systems and controls and/or Defendants' awareness of those deficiencies." *Id.* at 2. The Request also asserted that the Withheld Information was not CSI under the Board's Regulations, but rather was purely "factual" information. *Id.*

By letter to the parties of April 3, 2024, the Board stated that it was in the process of reviewing the Request. Robinson Aff., Exh. F (ECF 8-3) ("April 3 Letter"). To enable the Board to better assess the Request, the Board requested that Defendants provide additional information pertinent to the Regulations including the procedural posture of the litigation, the relevance of the Withheld Information, and other information. The Board asked that Petitioner provide a copy of the Request to Defendants, which it had not previously done, and stated that Petitioner "will be given the opportunity to comment on any information provided by Credit Suisse." *Id.* at 2.

In response, Petitioner sent an email to the Board, with a copy to Defendants, dated April 5, 2024, stating that it "intend[ed] to seek the Court's assistance in ordering Credit Suisse to disclose the Withheld Information." Robinson Aff., Exh. G (ECF 8-4). By letter to Petitioner dated April 9, 2024, the Board reiterated that "pursuant to the [Regulations], Credit Suisse may not provide CSI to [Petitioner] without the prior written permission of the Board's General Counsel, which [Petitioner] has not [yet] obtained." *Id.* Exh. H (ECF 8-5). Petitioner, Defendants, and the Board met and conferred and exchanged emails regarding the Request. *Id.*

Exhs. D, E (ECF 8-1, 8-2). In one such email, Board staff offered "each of the parties [the opportunity to] designate up to 15 documents from the [CSI Log] that they would like the Board to pay particular attention to in its review." *Id.* at 4.

By letter to the Board of April 25, 2024, with a copy to Petitioner, Defendants provided the additional information. Robinson Aff., Exh. I (ECF 8-6) ("April 25 Letter"). Petitioner responded by email dated April 28, 2024, *id*. Exh. D (ECF 8-1) at 1-2, and by letter of May 17, 2024, *id*. Exh. J (ECF 8-7) ("May 17 Letter"), stating that if the Board did not provide a determination on its Request by May 31, 2024, it "intend[ed] to seek court assistance." *Id*. at 6.

The Board issued its final Decision, which denied Petitioner's Request, on May 29, 2024. *Id*., Exh. K (ECF 8-8). The Board's detailed fourteen-page Decision sets forth the information and factors under its Regulations that the Board took into account and the rationale for its Decision. *Id*.; *see infra* at 12-28. In particular, the Board determined that Petitioner had "not shown a substantial need to use or disclose CSI that outweighs the Board's need to maintain confidentiality, and that disclosure is not consistent with the supervisory and regulatory responsibilities and policies of the Board." *Id*. at 7, 10-11 (citing 12 C.F.R. § 261.23(d)(1)). After determining that the Withheld Information was CSI under the Regulations and not purely factual as asserted by Petitioner, *see infra* at 12-18, the Board denied the Request on three bases: (i) Petitioner had not shown that the Withheld Information was relevant to the issues and matters in the underlying litigation outweighing the need for confidentiality, *see infra* at 18-22; (ii) equivalent information adequate to the needs of the case was available to Petitioner from other sources, *see infra* at 22-25; and (iii) Petitioner's request for CSI underlying an ongoing Board investigation raised heightened supervisory concerns. *See infra* at 25-28.

On July 25, 2024, Petitioner filed this miscellaneous action under the APA seeking "a judicial declaration pursuant to 5 U.S.C. § 702 et seq., and 28 U.S.C.A. § 2201 that documents and testimony withheld from Petitioner in the underlying action on behalf of the [Board] be produced." Motion at 1. Petitioner did not serve the Board with the Motion and underlying papers until August 6, 2024. *See* Court's Aug. 6, 2024 Order to Confer (ECF 2). On August 12, 2024, the Court entered the parties' agreed briefing schedule. (ECF 12). As set forth below, because the Board Decision was neither arbitrary, capricious, nor an abuse of discretion, the Board is entitled to summary judgment and Petitioner's Motion should be denied.

**ARGUMENT**

**I.    The Board Decision Denying Petitioner's Request is Subject to Arbitrary and Capricious Review and Governed by Applicable Federal Regulations**

**A.  Standard on a Motion for Summary Judgment in an APA Action**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a case involving review of a final agency action under the APA, however, "the usual Rule 56 summary judgment standard 'does not apply.'" *Jafarov v. United States Citizenship & Immigr. Servs.*, 2024 WL 69056, at *3 (S.D.N.Y. Jan. 5, 2024) (quoting *New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 516 (S.D.N.Y. 2019)). Rather, "the district judge sits as an appellate tribunal, and the entire case on review is a question of law." *Id.* (cleaned up). As such, "the role of the Court is not to determine whether there are genuine disputes of material fact, but to "'decid[e], as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA

standard of review,'" which is "deferential" to the agency. *Id.* (quoting *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020)).

### B. Because Petitioner's Underlying Action Arose in State Court and Petitioner Seeks Review Under the APA, the Arbitrary and Capricious Standard Applies

Under the Federal Reserve Act, "[t]he Board of Governors of the Federal Reserve System, at its discretion, may furnish any report of examination or other confidential supervisory information concerning any State member bank or other entity examined under any other authority of the Board, to any Federal or State agency or authority with supervisory or regulatory authority over the examined entity, to any officer, director, or receiver of the examined entity, and to any other person that the Board determines to be proper." 12 U.S.C. § 326. The Board is also authorized to "make all rules and regulations necessary to enable [it] effectively to perform" any of its "functions . . . specified in this Act." 12 U.S.C. § 248(i). The Board's Regulations, issued under these authorities and others, enable litigants such as Petitioner to request access to CSI[4] for use in litigation. *See infra* at 11-12 (describing Regulations). Where a state court litigant such as Petitioner requests access to documents or testimony under agency regulations such as

---

[4] Under the Board's Regulations, "Confidential supervisory information means nonpublic information that is exempt from disclosure pursuant to 5 U.S.C. 552(b)(8) and includes information that is or was created or obtained in furtherance of the Board's supervisory, investigatory, or enforcement activities, including activities conducted by a Federal Reserve Bank (Reserve Bank) under delegated authority, relating to any supervised financial institution, and any information derived from or related to such information. Examples of confidential supervisory information include, without limitation, reports of examination, inspection, and visitation; confidential operating and condition reports; supervisory assessments; investigative requests for documents or other information; and supervisory correspondence or other supervisory communications. Additionally, any portion of a document in the possession of any person, entity, agency or authority, including a supervised financial institution, that contains or would reveal confidential supervisory information is confidential supervisory information." 12 C.F.R. § 261.2(b)(1). The statutory exemption incorporated into the definition covers information that is "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8).

these, the agency's final decision is reviewable in federal court under the APA and not the Rule

45 or civil discovery standard generally applicable to cases originating in federal court. *Adler v.*

*DOJ*, 2018 WL 4571677, at *4 (S.D.N.Y. Sept. 24, 2018) (where state court plaintiffs "rely

solely on the APA and not Rule 45 . . . the Court evaluates the government's actions using the

'arbitrary and capricious' standard of § 706 of the APA"); *Watsontown Trucking Co. v. DOL*,

2018 WL 456300, at *3-4 & n.2 (S.D.N.Y. Jan. 17, 2018) (where state court plaintiff sought

review under § 702 of the APA of a federal agency's decision denying records under its

regulations, court proceeds under the APA's arbitrary and capricious standard); *Portaleos v.*

*Shannon*, 2013 WL 4483075, at *4 (N.D.N.Y. Aug. 19, 2013) ("'a state court litigant's only

recourse from a federal agency's refusal to comply with a state court subpoena is to bring an

APA claim'" (quoting *Watts v. SEC*, 482 F.3d 501, 508 n.* (D.C. Cir. 2007))); *Battiste v. DOJ*,

2009 WL 3086429, at *5 (N.D.N.Y. Sept. 23, 2009) ("Where [a federal] agency refuses to

produce the requested documents or to make an employee available to provide testimony, 'the

sole remedy for the state-court litigant is to file a collateral action in federal court under the

APA.'" (quoting *Houston Bus. J., Inc. v. OCC*, 86 F.3d 1208, 1212 (D.C. Cir. 1996))).

 This is so because "the federal government, in enacting the APA, waived its immunity

with respect to those 'action[s] in a court of the United States' which seek review of 'agency

action.'" *In re SEC ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004) (quoting 5 U.S.C. § 702).

Because Petitioner's underlying action arose in state court, no Rule 45 subpoena was ever served

on the Board, and Petitioner identifies no other basis for invoking this Court's federal

jurisdiction.[5] Accordingly, Rule 45 "undue burden" standards and federal court discovery rules

---

[5] The Declaratory Judgment Act, 28 U.S.C. § 2201, cited in Petitioner's Brief and Motion (at 1),
"does not independently create federal jurisdiction." *Warner-Jenkinson Co. v. Allied Chemical
Corp.*, 567 F.2d 184, 186 (2d Cir. 1977). "Rather, it provides a remedy available only if the court

are inapplicable in reviewing the Board's Decision. *See Watts*, 482 F.3d at 508 n.* (D.C. Cir. 2007) (Kavanaugh, J.) ("In general, state court subpoenas present entirely different issues (because of the Supremacy Clause and sovereign immunity), and a state court litigant's only recourse from a federal agency's refusal to comply with a state court subpoena is to bring an APA claim—necessarily governed by the APA arbitrary and capricious standard—against the agency in federal court."); *Houston Bus. J.,* 86 F.3d at 1212 ("a state-court litigant must request the documents from the federal agency pursuant to the agency's regulations . . . . If the agency refuses to produce the requested documents, the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA"); *Portaleos*, 2013 WL 4483075, at *4 (noting "disagreement as to whether Rule 45 or § 706 controls when a subpoena is issued under Federal Rule of Civil Procedure 26 during federal litigation," but holding "[w]here, as here, the subpoena was issued during state-court litigation . . . § 706 is the proper standard").

Here, Petitioner filed this miscellaneous action under the APA seeking "a judicial declaration pursuant to 5 U.S.C. § 702 *et seq.*, and 28 U.S.C. § 2201 that documents and testimony withheld from Petitioner in the underlying action on behalf of the [Board] must be produced." Motion at 1; *see also* Pet. Br. at 9 (citing 5 U.S.C. § 702 *et seq.*). Petitioner concedes that the Board's May 29 Decision is a final agency action under the APA and further concedes that the arbitrary and capricious standard applies. Pet. Br. at 10 ("The APA requires reviewing courts to 'hold unlawful and set aside agency action, findings, and conclusions found to be,' among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

---

has jurisdiction from some other source." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008).

with law," or "in excess of statutory jurisdiction, authority, or limitations." (quoting 5 U.S.C.
§ 706(2)(A), (C))).

"Under [the APA's] 'narrow' standard of review, a 'court is not empowered to substitute
its judgment for that of the agency.'" *Town of Southold v. Wheeler*, 48 F.4th 67, 77 (2d Cir.
2022) (internal quotations omitted). Instead, the court's task is "to determine whether the agency
has considered the pertinent evidence, examined the relevant factors, and articulated a
satisfactory explanation for its action." *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir.
2000). "A reviewing court may not itself weigh the evidence or substitute its judgment for that of
the agency." *Islander East Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150 (2d Cir. 2008).
Review under the arbitrary and capricious standard is "narrow, and deferential to the [agency's]
expertise." *New York v. Raimondo*, 84 F.4th 102, 106 (2d Cir. 2023); *Adler,* 2018 WL 4571677,
at *3 (APA standard of review is "'highly deferential and presumes the agency's action to be
valid.'" (internal quotation omitted)); *see also Jafarov*, 2024 WL 69056, at *4 ("Under the APA,
courts review agency action under a deferential standard." (cleaned up)). "Under that standard,
an agency need only 'examine the relevant data and articulate a satisfactory explanation for its
action including a rational connection between the facts found and the choice made.'" *Raimondo*,
84 F.4th at 106-07 (internal quotation omitted). The focus is on "the administrative record
already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*,
411 U.S. 138, 142 (1973) (per curiam). And the burden of persuasion is on the party challenging
the agency's decision. *Battiste*, 2009 WL 3086429, at *5.

As set forth below, the Board properly applied the factors in its Regulations, examined
the relevant data, and articulated a satisfactory explanation for denying the Request, and its
decision was neither arbitrary nor capricious.

II.    **The Board's Decision Properly Applied the Factors in Its Regulations and is Not Arbitrary or Capricious**

    A.  **The Board's Regulations**

The Board's Regulations define CSI to include information that is or was created or obtained in furtherance of the Board's supervisory, investigatory, or enforcement activities, including activities conducted by a Federal Reserve Bank (Reserve Bank) under delegated authority, relating to any supervised financial institution, and any information derived from or related to such information," and provide examples of CSI. 12 C.F.R. § 261.2(b)(1); *see supra* n.4. Importantly, the Regulations provide that "any portion of a document in the possession of any person, entity, agency or authority, including a supervised financial institution, that contains or would reveal confidential supervisory information is confidential supervisory information." *Id.*

Under the Regulations, CSI "is confidential and privileged," and "the Board does not normally disclose such information to the public or authorize third parties in possession of [CSI] to further use or disclose the information." 12 C.F.R. § 261.23(a)(1). Upon written request to the General Counsel,[6] the Board may make CSI available to a party in litigation if such person is able to show "a substantial need to access [CSI] that outweighs the need to maintain confidentiality," 12 C.F.R. § 261.23(d)(1)(i), and that approval is "consistent with the supervisory and regulatory responsibilities and policies of the Board." *Id*. § 261.23(d)(1)(ii). Before CSI may be released, the requester must provide in writing:

    (i) The judicial or administrative action, including the case number and court or adjudicative body and a copy of the complaint or other pleading setting forth the assertions in the case;

---

[6] The Board's determination to deny Petitioner's February 20 Request was made by the Board's Associate General Counsel under delegation from the General Counsel. May 29 Decision at 14. For ease of reference, the Decision is referred to herein as "the Board's" Decision.

(ii) A description of any prior judicial or other decisions or pending motions in the case that may bear on the asserted relevance of the requested information.

(iii) A narrow and specific description of the [CSI] the requester seeks to access or to disclose for use in the litigation including, whenever possible, the specific documents the requester seeks to access or disclose;

(iv) The relevance of the [CSI] to the issues or matters raised by the litigation;

(v) The reason why the information sought, or equivalent information adequate to the needs of the case, cannot be obtained from any other source; and

(vi) A commitment to obtain a protective order acceptable to the Board from the judicial or administrative tribunal hearing the action preserving the confidentiality of any information that is provided.

12 C.F.R. § 261.23(b)(2). Petitioner's February 20 Request sought access to CSI under these

Regulations. *See* Request (ECF 6-1) at 1-8 and Exhs. A-I (ECF 6-1, 7).

### B. The Board Determined that the Withheld Information is CSI Under Its Regulations

In making a determination on Petitioner's Request, the Board first considered whether the

record before it supported Petitioner's claim that "Credit Suisse has withheld on purported CSI

grounds internal [Credit Suisse] business communications and factual information that is not

properly withheld as CSI."[7] Request (ECF 6-1) at 2; *see also id.* at 4-6. Due to the volume of

---

[7] The Regulations provide that CSI does not include "[d]ocuments prepared by or for a supervised financial institution for its own business purposes that are in its own possession and that do not include confidential supervisory information." 12 C.F.R. § 261.2(b)(2)(i). Pursuant to this Regulation, the Board informed the parties that "portions of [Credit Suisse's] internal business documents that do not contain or reveal the Board's CSI may be produced to the plaintiff, provided that all CSI has first been redacted." Board Decision at 7 n.4. The Board noted that because at least one of Petitioner's discovery requests (Request 4) "seeks documents provided to or received from Government Agencies including the Board," *id.*, "the Withheld Information encompasses some internal Credit Suisse business documents that Credit Suisse provided to the Board pursuant to its investigatory requests, which, *in the form and manner provided to the Board*, are CSI for that reason under the Board's regulation." *Id.* (citing 12 C.F.R. § 261.2(b)(1)) (emphasis added).

Withheld Information, and because Petitioner had divided the information into three broad categories, *id*. at 4, Board staff reviewed "representative exemplars of the documents listed" in the CSI Log from each of those three categories to determine whether the Withheld Information was CSI. Board Decision (ECF 8-8) at 8 and n.5. In addition, Board staff reviewed the exemplars designated by Defendants in the April 25 Letter, (ECF 8-6) at 4, 6-8, 10. *See* Board Decision at 8 and nn.5, 8. Because Petitioner declined to designate exemplars, Board staff reviewed exemplars Petitioner described in the Request. *Id*. at 8 and n.9. The Board listed in its May 29 Decision the regulatory Bates numbers from the CSI Log of the exemplars it reviewed. *Id.* at 8-9 and nn.6-9.

"Based on information garnered in this review, and information provided . . . by the plaintiff and defendants," the Board determined that the "the Withheld Information . . . is CSI under the . . . [R]egulations and protected from discovery." *Id.* at 8. In particular, the Board determined that the ten investigative transcripts are "investigative communications between the Board and Credit Suisse, a supervised financial institution, concerning possible violations of law, regulation, or unsafe or unsound banking practices," and therefore CSI. *Id*.; *see* 12 C.F.R. § 261.2(b)(1) (CSI includes "investigative requests for documents or other information") and *infra* at 25-28. The Board determined that the remaining Withheld Information consisted of "internal Credit Suisse emails and documents discussing, describing, or responding to Federal Reserve supervisory or investigative requests, directions, or communications (or those of other regulators); Credit Suisse's responses to those inquiries; internal Credit Suisse emails and documents that contain or would reveal supervisory communications; direct supervisory communications between Credit Suisse and the Federal Reserve including bank examination reports and supervisory correspondence; and document productions provided by Credit Suisse to the Federal Reserve in response to its investigative or supervisory requests," all of which is CSI

under the Regulations. *Id*. at 9; *see* 12 C.F.R. § 261.2(b)(1).

Petitioner disputes the Board's determination that withheld communications "internal to" Credit Suisse that contain or reveal CSI are CSI, Pet. Br. at 13, but Petitioner's position is incorrect. In making this determination, the Board followed its governing Regulation, which makes clear that "any portion of a document in the possession of any person, entity, agency or authority, including a supervised financial institution, that *contains or would reveal* [CSI] is [CSI]," and its decision applying this requirement is not arbitrary or capricious. 12 C.F.R. § 261.2(b)(1) (emphasis added); *see* Board Decision at 9; *Town of Southold*, 48 F.4th at 77 ("so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action" (internal quotation omitted)).

The Board also properly applied relevant caselaw in determining that "internal [Credit Suisse] documents discussing supervisory requests and the bank's potential responses thereto are the very essence of supervisory communications," and that the policy reasons underlying the common law bank examination privilege of safeguarding the free flow of communications between banks and their supervisors weighed against disclosure of internal Credit Suisse documents that would reveal CSI. Board Decision at 9 (citing *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992) (bank examination privilege protects the "iterative process of comment by the regulators and response by the bank" that is vital to the success of supervision); *In re B of I Holding Inc. Sec. Litig*., 2022 WL 507663, at *3 (S.D. Cal. Feb. 18, 2022) (rejecting "plaintiff's assertion that the Bank 'must . . . produce 'internally disseminated communications not sent to the [banking agency]' . . . [because such] . . . internal [bank] communications [may] convey the substance of the [agency's]

communications and deliberations with the Bank")); *see also* 12 C.F.R. § 261.23(d)(1)(i)
(disclosure must be "consistent with the supervisory and regulatory responsibilities and policies
of the Board").

      Petitioner further argues that the Court should overturn the Board's May 29 Decision
because the Withheld Information is factual, not CSI, but this is unfounded. Pet. Br. at 13-17.
The Board considered and rejected this argument, which was central to Petitioner's Request. *Id.*
at 2, 4-6. In particular, the Board determined, based on its review of exemplars, the Regulations,
and applicable caselaw, that the Withheld Information "contains communications between Credit
Suisse and its supervisors, or internal Credit Suisse emails or documents which contain or would
reveal CSI." Board Decision at 9. It also included "documents produced to the Federal Reserve
in response to supervisory or investigative requests, which is CSI under the regulation and
protected from discovery" in that form. *Id.* at 9-10 (citing 12 C.F.R. § 261.2(b)(1)) (CSI includes
"information that is or was created or obtained in furtherance of the Board's supervisory,
investigatory or enforcement activities"); *see also FHFA v. HSBC North America Holdings Inc.*,
2014 WL 1909446, at *3-4 (S.D.N.Y. May 13, 2014) (documents sent by supervised entity to
bank supervisor "that reflect recommendations of items to be discussed at a joint meeting,"
"provide narrative answers to [the supervisor's] questions," and the supervisor's "qualitative
reviews of [the supervised entities'] operations" were properly withheld under the bank
examination privilege). Furthermore, the Board found that the examples cited in Petitioner's
Request of communications Petitioner asserted were "factual" in nature—e.g., "direct questions
to witnesses in depositions regarding what information they provided to the Federal Reserve in
response to supervisory inquiries" and "an internal Credit Suisse email listing a series of specific
supervisory questions posed by Federal Reserve examiners to Credit Suisse"—were

"quintessentially supervisory communications protected from discovery by the bank examination privilege and are CSI under the Board's regulation, [] not factual information." Board Decision at 10.

Moreover, the Board properly determined that, "[t]o the extent that any Withheld Information could be characterized as 'factual,' . . . it is inextricably intertwined with opinion and therefore falls within the bank examination privilege and is CSI under the Board's regulations." *Id*. (citing *In re B of I Holding*, 2022 WL 507663, at *3 ("all documents contain facts . . . and where those facts are 'intertwined with the [banking agency's] opinions, conclusions and recommendations' such that 'the deliberative portions cannot be redacted from the documents,' the privilege is properly asserted over the entire document"). The Board's determination that the Withheld Information is CSI was based on the relevant factors and is neither arbitrary nor capricious under the APA.

Petitioner complains that the Board's determination that the Withheld Information is CSI "based on a review of just 4% of the challenged documents," Pet. Br. at 2, but that decision, too, was reasonable, and not arbitrary or capricious, in light of the large volume of Withheld Information; Petitioner's repeated requests for a rapid decision; the fact that the exemplars were representative of the three categories of information in Petitioner's Request; and the Board's invitation to the parties to designate exemplars of their own choosing. Board Decision at 8-9 and nn.5-9; *see Raimondo*, 84 F.4th at 106-07 ("agency need only 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made'"); *see also In re B of I Holding*, 2022 WL 507663, at *3-5

16

(court bases its determination as to bank examination privilege in part on *in camera* review of 41 exemplar documents out of a total of 29,067 withheld documents).[8]

Finally, Petitioner's citation to *King v. Habib Bank Ltd.*, 2023 WL 8879170, at *2 (S.D.N.Y. Dec. 22, 2023), for the proposition that "the relevant inquiry is not, therefore, whether the information is CSI but, instead, whether the information is privileged," Pet. Br. at 11, is inapposite. The *Habib* case originated in federal court, and the magistrate judge there applied the five-factor federal bank examination privilege test in determining whether to uphold the regulators' claim of privilege. 2023 WL 8879170, at *1, 3. Here, by contrast, the underlying case arose in state court, and Petitioner challenges the Board's Decision under its Regulations and the APA's arbitrary and capricious standard. Pet. Br. at 10, 11; Motion at 1. The arbitrary and capricious standard does not require the Board to prove application of the common law bank examination privilege factors (even though they are satisfied), nor does the Board have a "heavy burden" as Petitioner contends. Pet. Br. at 2; *see also id.* at 12. Rather, the APA standard "is deferential" to the Board's decision and "'assess[es], among other matters, whether the [administrative] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Watsontown Trucking*, 2018 WL 456300, at *3 (internal quotations omitted); *see also Jafarov*, 2024 WL 69056, at *4 (APA review is "deferential" to the

---

[8] Courts routinely review representative exemplars in like circumstances given understandable resource constraints, and there is no requirement that the Board, in deciding requests under its governing federal Regulations, allow public resources to be fully coopted by private state court litigants. Petitioner goes so far as to claim that the Board owed it an *affidavit* at the time the Board denied its request, and that such affidavit must have come from the Board's General Counsel himself. Pet. Br. at 21. That is plainly not so, and the deciding official in this case acted under appropriately delegated authority. *See* 12 C.F.R. § 261.3(d) ("Any action or determination required or permitted by this part to be done by . . . the General Counsel . . . may be done by any employee who has been duly authorized or designated by this purpose by . . . the General Counsel.").

agency). Here, given that CSI is "confidential and privileged" under the Regulations, 12 C.F.R.

§ 261.23(a)(1), and that the Board must determine whether "[a]pproval is consistent with the

supervisory and regulatory responsibilities and policies of the Board," *id*. § 261.23(d)(1)(ii), the

Board properly took into account that the Withheld Information implicates the common law bank

examination privilege and the policies underlying that privilege. The Board also applied its own

Regulations and considered information provided by the parties and its review of representative

exemplars in denying Petitioner's Request. Board Decision at 6-10. As explained further below,

that decision was neither arbitrary nor capricious, and Petitioner's claim that the Board bears a

heavy burden of establishing common law privileges (and demonstrating why qualified

privileges should not be overridden by this Court) should be rejected. *Raimondo*, 84 F.4th at 106

(agency need only "examine the relevant data and articulate a satisfactory explanation for its

action" (internal quotation omitted)).

### C. The Board Denied the February 20 Request Because It Determined that Petitioner Did Not Demonstrate Relevance of the Withheld Information to Issues or Matters Raised in the Underlying Litigation Outweighing the Need for Confidentiality

Having properly determined that the Withheld Information is CSI, the Board correctly

weighed the factors set forth at 12 C.F.R. § 261.23 to deny the Request. In particular, the Board

relied on "the Board's policy . . . that [CSI] is confidential and privileged[,] and . . .[that] the

Board does not normally disclose [CSI] to the public or authorize third parties in possession of

[CSI] to further use or disclose the information." 12 C.F.R. § 261.23(a)(1). Rather, the person

seeking access to CSI must show "a substantial need to access [CSI] that outweighs the need to

maintain confidentiality," and that "[a]pproval is consistent with the supervisory and regulatory

responsibilities and policies of the Board." 12 C.F.R. § 261.23(d)(1)(i) and (ii); *see* Board

Decision at 7. The person seeking access must show, among other factors, "the relevance of the

[CSI] to the issues or matters raised by the litigation," and "[t]he reason why the information

sought, or equivalent information adequate to the needs of the case, cannot be obtained from any

other source." *Id.* at 7 (citing 12 C.F.R. §§ 261.23(b)(2)(iv) and (v)). Here, the Board denied

Petitioner's Request for three reasons.

      *First*, the Board determined that Petitioner "ha[s] not shown that the Withheld

Information, which is privileged and confidential under the Board's federal regulations and

applicable privileges . . . is 'relevant to the issues or matters raised by the litigation.'" Board

Decision at 11 (quoting 12 C.F.R. § 261.23(b)(2)(iv)). The Board relied on the fact that

Petitioner "[sought] access to the Withheld Information because it 'concerns deficiencies in

Credit Suisse's risk management processes and controls and/Or Defendants' awareness of those

deficiencies.'" *Id.* (quoting Request at 2 and citing May 17, 2024 Letter at 4-5). The Board

observed that Petitioner asserted relevance based on findings in the Board's Consent Order "that

there were 'longstanding deficiencies in [Credit Suisse's] U.S. Operations' risk management'

and that the Bank failed to take 'any effective measures to reduce the known risks posed by

Archegos,'" which Petitioner asserted were "relevant to the same risk management failures

alleged in" the Complaint. *Id.* (quoting Request at 7).

      However, the Board reasonably determined that "the fact that the Board's forward-

looking Consent Order addresses risk management failures at Credit Suisse, including failures

connected to the Archegos losses, does not mean that the Federal Reserve's supervisory

communications giving rise to the Consent Order, or its subsequent investigations and other

supervisory communications, are relevant." Board Decision at 11. In particular, the Board relied

on the fact that Petitioner's "discovery request for documents provided to and/or received from

government agencies (including the Federal Reserve) is *broad in scope* and *is not limited to the*

*risk management failures alleged in your Complaint to have given rise to the Archegos,*

*Malachite, and Greensill losses*, or the actions and knowledge of the Individual Defendants

which you allege caused those losses." *Id*. (emphasis added). Rather, the Board found that

Petitioner's Document Requests "broadly encompass[] supervisory communications in subject

matter areas *wholly unrelated* to the losses and risk management failures alleged in the

Complaint." *Id*. (citing Request, Exh. D (Document Request) at 16 (Request 4)).

      The Board also based its determination that Petitioner had not shown relevance sufficient

to overcome the need to maintain confidentiality of CSI on the fact that "[t]here are no

allegations in the Complaint concerning the Federal Reserve's supervision of Credit Suisse, nor

are supervisory communications in particular, as opposed to Credit Suisse's own internal

business documents regarding its risk management policies and the Archegos, Malachite and

Greensill relationships, relevant to your breach of fiduciary duty claims against the Individual

Defendants." Board Decision at 11. The Board further relied on Defendants' statement in the

April 25 Letter that "'[n]umerous [W]ithheld [D]ocuments containing [Board] CSI have nothing

to do with risk management in the Prime Services business.'" *Id*. (quoting April 25 Letter at 4).

Moreover, the Board found that Petitioner's "discovery requests cover a period 'from January 1,

2016 to the date of production,' . . . which encompasses supervisory documents well before the

risk management failures that resulted in the Archegos and Greensill losses in March 2021 and

the Malachite losses in March 2020 alleged in the Complaint, and up to the present day, which is

well after the alleged breaches of fiduciary duty occurred." *Id*. (quoting Document Requests and

citing Complaint). Finally, the Board found that "while your Complaint seeks recovery for

alleged breaches of fiduciary duty and misconduct by the Individual Defendants, your broad

request for CSI is not limited to information sent to or received by the Individual Defendants, or

relating in particular to the actions or knowledge of the Individual Defendants, but rather seeks supervisory communications with Credit Suisse generally, and therefore encompasses privileged and confidential supervisory information unrelated to the subject matter of this action." *Id*. at 11-12.

Here, the Board's determination was "based on a consideration of the relevant factors" under the Regulations and information regarding the underlying action provided by Petitioner and Defendants, and there was no "clear error of judgment" or abuse of discretion. *City of New York v. Shalala*, 34 F.3d 1161, 1167 (2d Cir. 1994) (citations omitted); *Solomon v. Nassau Co.*, 274 F.R.D. 455, 459 (E.D.N.Y. 2011) (upholding federal agency's denial of state court plaintiff's request for testimony of agency employee under agency regulations where, "[a]lthough the Plaintiff may disagree with the [agency]'s assessment of the direct and indirect burden caused by the testimony, absent clear error or an abuse of discretion, the Court defers to the agency's determination."). Petitioner's argument that the Withheld Information "is relevant" because "the at-issue documents were identified by Credit Suisse as responsive to Petitioner's document request," Pet. Br. at 25, erroneously substitutes the civil discovery standard for cases originating in federal court for the applicable APA arbitrary and capricious standard and must be rejected. *Watsontown Trucking*, 2018 WL 456300, at *4 (in reviewing agency determination to deny testimony in state court litigation, "the Court may only consider whether Defendant's denial of Plaintiffs' request was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' [and] . . . [d]efendant's denial was none of those things" (quoting 5 U.S.C. § 706(2)(A))). Moreover, Petitioner's assertion that the Withheld Information should be ordered produced simply because it is responsive to a Document Request in state court litigation between private parties ignores the fact that it is "confidential and privileged" under federal Regulations.

12 C.F.R. § 261.23(a)(1). It also ignores the Board's determination, discussed *infra* at 22-25, that "equivalent information adequate to the needs of the case" is available to Petitioner from other sources, Board Decision at 12-13 (citing 12 C.F.R. § 261.23(b)(2)(v)), and its determination, discussed *infra* at 25-28, that disclosure is "not consistent with the supervisory and regulatory responsibilities and policies of the Board" because Petitioner "seek[s] access to documents and witness interviews relating to an ongoing Federal Reserve investigation," which will not only "chill candor in communications between banks and their supervisors," but "could compromise an ongoing Federal Reserve investigation." *Id*. at 13 (citing 12 C.F.R. § 261.23(d)(1)(i)); *see also id*. at 10 (citing 12 C.F.R. § 263.454, which provides that "the entire record of any formal investigative proceeding [by the Federal Reserve], including . . . the transcripts of such proceeding, and all documents and information obtained by the designated representative(s) . . . will be confidential"). The Board articulated a rational explanation for its determination that the Petitioner had not shown relevance of the Withheld Information outweighing the need for confidentiality, and that determination should be upheld. *Town of Southold*, 48 F.4th 77 ("so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action").

### D.  The Board Denied the February 20 Request Because Equivalent Information Adequate to the Needs of the Case Is Available to Petitioner From Other Sources

*Second*, the Board properly relied on the Regulations in determining that Petitioner "has not demonstrated that 'equivalent information adequate to the needs of the case, cannot be obtained from any other source.'" Board Decision at 12 (quoting 12 C.F.R. § 261.23(b)(2)(v)). In particular, the Board found that Petitioner "has access in discovery in this case to the underlying business documents in Credit Suisse's possession regarding the Archegos, Greensill, and

Malachite relationships that form the gravamen of plaintiff's Complaint, as well as business documents relating to risk management practices in the Prime Services business." *Id.* (citing April 25 Letter at 5). The Board relied on Defendants' representation that Petitioner "has 'access to *virtually all business documents Credit Suisse had relating to the Archegos, Greensill, and Malachite relationships* and losses,' including '*more than 230,000 documents from 46 custodians*, including communications from lower-level [P]rime [S]ervices risk employees up to and including the Credit Suisse Group AG Board of Directors,'" and that "'[a]dditional documents are still being produced.'" *Id.* (quoting April 25 Letter at 5) (emphases added). Based on this information, the Board reasonably determined that documents provided to Petitioner by Credit Suisse in discovery "'provide a broad and deep view of Credit Suisse's relevant risk management processes and controls,' including 'Credit Suisse's internal deliberations and discussions concerning risk management' and 'reflect real-time internal reactions to the Archegos, Greensill, and Malachite incidents that are the focus of this litigation.'" *Id.* (quoting April 25 Letter at 5).

In addition, the Board found that "[u]sing these internal Credit Suisse business documents, as well as non-privileged documents and testimony of the Individual Defendants," and "from relevant third parties, such as officers and employees of Archegos, Malachite, and Greensill," as well as "the testimony and analyses of experts" as appropriate, Petitioner "can form its own conclusions as to whether Individual Defendants breached their fiduciary duties . . . [or] acted in accordance with the relevant standard of care." Board Decision at 12. In addition to this wealth of information, the Board relied on the availability to Petitioner, as stated in the Complaint and Request, of the "publicly available Paul Weiss report[9] and underlying documents

---

[9] *Available at* https://www.paulweiss.com/practices/litigation/internal-investigations/news/credit-

and testimony," which Petitioner characterized as "a detailed report [commissioned by Credit Suisse's board of directors] laying out the gaping flaws and unreliability of [Credit Suisse's] counterparty risk controls and systems.'" *Id.* at 13 (quoting Request at 3). The Board noted that Petitioner "has cited extensively from the findings of the Paul Weiss Report in the Complaint," and has requested from Defendants "'all Discovery Materials concerning the Paul Weiss Report and Investigation.'" *Id.* (citing Complaint and quoting Request, Exh. D, at 16 (Request 1)). Based on Petitioner's Request, Complaint, and Document Request, the Board concluded that "[t]he Paul Weiss report and underlying documents which, by [Petitioner's] own allegations, arises from much the same conduct as alleged in the Complaint, provides plaintiff with an in-depth review and conclusions that bear on the allegations of the Complaint." *Id.*

Finally, the Board determined that Petitioner "has available to it, and has cited extensively in the Complaint from, the publicly available Bank of England letter,"[10] concerning failures in risk management at large investment banks, including Credit Suisse, and has "sought discovery from [D]efendants regarding that letter." *Id.* (citing Complaint and Request, Exh. D, at 16 (Request 2)). The Board found that the Bank of England Letter and associated discovery provided Petitioner with yet another source of information for its case, *id.*; *see* 12 C.F.R. § 261.23(b)(2)(v), further supporting the Board's determination.

Petitioner does not argue that the Board's finding that information adequate to the needs of the case is available to it from other sources violates the APA, but rather cites cases originating in federal court (not state court as here) applying the bank examination privilege rather than the arbitrary and capricious standard. Pet. Br. at 26-27. Not only are those cases

---

suisse-publishes-independent-review-of-archegos-losses?id=40637.
[10] *Available at* https://www.bankofengland.co.uk/-/media/boe/files/prudential-regulation/letter/2021/december/supervisory-review-global-equity-finance-businesses.pdf.

inapplicable here, *see supra* at 7-10, but they arise from different facts entirely. For example,

Petitioner cites *In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 28-29 (D.D.C. 2004), in

which "'defendants and their auditors . . . refused to provide . . . records to plaintiffs." But

Petitioner made no showing before the Board that Defendants or third parties refused to provide

it with necessary discovery. To the contrary, not only did Defendants catalog the copious

discovery provided to Petitioner, April 25 Letter at 5-6, with "additional documents . . . still

being produced," *id.*, but the Complaint and Request cited liberally from other sources of

information such as the Paul Weiss Report and Bank of England Letter. Board Decision at 12-13.

Accordingly, nothing suggests that the Board "relied on factors which Congress has not

intended it to consider, entirely failed to consider an important aspect of the problem, offered an

explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be ascribed to a difference in view or the product of agency

expertise." *Watsontown Trucking Co.*, 2018 WL 456300, at *4 (internal quotation omitted); *see

also Camp*, 411 U.S. at 138 *(*on APA review, Court must rely on "the administrative record

already in existence"). The Board's decision was neither arbitrary nor capricious.

### E.  The Board Denied the February 20 Request Based on Its Finding that Disclosure Was Not Consistent with the Supervisory and Regulatory Responsibilities and Policies of the Board Because Petitioner Sought Records Regarding an Ongoing Board Investigation

*Third*, the Board determined that "concerns regarding disclosure of CSI are heightened in

this case" because Petitioner sought "access to documents and witness interviews relating to an

ongoing Federal Reserve investigation." Board Decision at 13. As a result of this ongoing

investigation, the Board found that, "[i]n addition to the chilling of candor in communications

between banks and their supervisors that is attendant to disclosures of CSI," disclosing the

Withheld Information "could compromise an ongoing Federal Reserve investigation by revealing

areas of particular interest to the Federal Reserve and by compromising the confidentiality of witness interviews that were taken under promise of confidentiality." *Id.* Accordingly, the Board made "the additional finding . . . that disclosure of the Withheld Information to the [Petitioner] under the circumstances of this case is not consistent with the supervisory and regulatory responsibilities and policies of the Board." *Id.* (citing 12 C.F.R. § 261.23(d)(1)(ii)).

Petitioner takes issue in particular with the Board's determination to deny access to the ten investigative transcripts, claiming that the Board has not "carried its burden to show that [law enforcement privilege] applies." Pet. Br. at 22; *see also id.* at 2 (the Board faces a "heavy burden to establish privilege"). However, Petitioner again confuses the arbitrary and capricious standard which it concedes applies, *id.* at 10, under which "[j]udicial review . . . is 'highly deferential and presumes the agency's action to be valid,'" *Adler*, 2018 WL 4571677, at *3, and where "[t]he court is not empowered to substitute its judgment for that of the agency," *Town of Southold*, 48 F.4th at 77, with the civil discovery standard of cases originating in federal court. Here, the Board correctly took into account the fact that the ten investigative transcripts were taken in connection with "an ongoing [Board] investigation,"[11] and the fact that such investigative transcripts are commonly privileged in civil discovery in order to preserve the integrity of investigations. Board Decision at 8 (citing *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998)), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999); *see also In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988) (law enforcement investigatory privilege protects "[t]he public interest in safeguarding the integrity of on-going civil and criminal investigations"). The Board also properly relied on its

---

[11] In addition to enforcement actions against supervised financial institutions such as the Consent Order with Credit Suisse, the Board is authorized to investigate and bring enforcement actions against "institution affiliated part[ies]," including officers, directors, employees and stockholders, of a Board-supervised financial institution. 12 U.S.C. §§ 1813(u), 1818(b), (e), (i).

Regulation providing that investigative material, including transcripts, are confidential. *Id.* at 10 (citing 12 C.F.R. § 263.454). Significantly, the Board also relied on the fact that Petitioner "*has already deposed in discovery in this action six of the ten individuals* whose Federal Reserve interview transcripts [it] seeks, and has *indicated its intention to depose most of the remaining individuals* before the conclusion of discovery." *Id*. at 12 (citing April 25 Letter at 5). Thus, the Board properly concluded based on relevant factors explained to Petitioner that "not only would production of the ten Federal Reserve interview transcripts you seek impermissibly intrude on the Federal Reserve's lines of inquiry in an ongoing investigation, but it is redundant of deposition discovery that you have already taken or could take in discovery in this action." *Id.*; *see also* 12 C.F.R. § 261.23(b)(2)(v) (General Counsel may consider "reason why the information sought, or equivalent information adequate to the needs of the case, cannot be obtained from any other source").

Petitioner offers no credible reason why it needs access to Federal Reserve investigative interview transcripts when it already has, or plans to, depose the exact same witnesses in the underlying action, *see* Pet. Br. at 22-24, nor why it needs access to internal Credit Suisse documents gathered by the Board in the course of an ongoing investigation when the underlying business documents have already been produced to it by Credit Suisse. Board Decision at 12, 13. The Board's determination to deny access to investigative interview transcripts and Withheld Information gathered in the course of an ongoing Federal Reserve investigation was neither arbitrary nor capricious. *Adler*, 2018 WL 4571677, at *4 (upholding DOJ decision declining to produce "entire investigatory file" to state criminal defendant, which was based on "legitimate concerns" including "law enforcement privilege," and was "not arbitrary and capricious conduct"); *Battiste,* 2009 WL 3086429, at *6 (USAO decision not to authorize disclosure of

investigative material to state criminal defendant was "neither arbitrary nor capricious" where agency determined that "[p]laintiff has failed to demonstrate that his need for the documents or testimony outweighs the need to prevent disclosure" of law enforcement information).

Accordingly, the Board's Decision to deny Petitioner's Request is supported by the record before it, relies upon the factors in the Regulations, and articulates a rational connection between the facts found and the choices made, and is neither arbitrary nor capricious.

## CONCLUSION

For the reasons above, the Board respectfully requests that the Court grant the Board's Cross Motion for Summary Judgment and deny Petitioner's Motion.

Dated:  August 30, 2024

Respectfully submitted,

/s/ Yvonne F. Mizusawa
Joshua P. Chadwick
Senior Special Counsel
Yvonne F. Mizusawa
Senior Counsel
Monika Moore (*pro hac vice* pending)
Senior Counsel
Board of Governors of the Federal Reserve System
20th Street and Constitution Ave., N.W.
Washington, D.C. 20551
yvonne.f.mizusawa@frb.gov
(202) 469-1007