# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM FOR THE CITY OF PROVIDENCE, derivatively as a shareholder of CREDIT SUISSE GROUP AG on behalf of CREDIT SUISSE GROUP AG,<br><br>Petitioner<br><br>v.<br><br>BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,<br><br>Respondent. | Misc. Case No. 1:24-mc-00349<br><br>Underlying Action:<br><br>*Employees Retirement System for the City Of Providence, derivatively as a shareholder of Credit Suisse Group AG on behalf of Credit Suisse Group AG vs. Urs Rohner et al*, Docket No. 651657/2022 (N.Y. Sup Ct. Apr 26, 2022) |

**[PROPOSED] PETITIONER'S RESPONSE TO *AMICUS CURIAE* BRIEF OF UBS AMERICAS HOLDING, LLC**

**BERNSTEIN LITOWITZ BERGER**
 **& GROSSMANN LLP**
Jeroen van Kwawegen
Jeremy P. Robinson
Edward G. Timlin
Eric J. Riedel
Stephen C. Boscolo
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400

*Counsel for Petitioner*

Petitioner submits this short response to the submission filed by amicus UBS Americas Holding, LLC ("UBS" or the "Bank").

*First*, the Bank's privilege log was submitted in the New York action and must comply with New York privilege law. Similar to Federal law, New York requires a party to disclose "all matter material and necessary in the prosecution or defense of an action" ***unless*** the information is ***privileged*** or constitutes attorney work product. CPLR 3101. And "[t]he party asserting the privilege bears the burden of establishing its entitlement to protection[.]" *See Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 624 (N.Y. 2016). Here, UBS produced a skeletal amended privilege log that cannot substantiate the assertion of privilege. Indeed, virtually every single document was labeled "confidential supervisory information" without support, explanation, or justification. *See, e.g.,* ECF No. 6, Ex. B, Entry No. 5 ("Document constituting ***confidential supervisory information*** belonging to the Federal Reserve"); *Hinshaw & Culbertson, LLP v. E-Smart Technologies, Inc.*, 2012 WL 1653094 (N.Y. Sup. Ct. Mar. 27, 2012) (holding a privilege log must contain sufficient information to allow a "court to attempt to ascertain the bona fides of the claim" of privilege).

*Second*, the Bank's self-serving claim that Petitioner does not need the Withheld Information is meritless. *See* Amicus Brief ("AB"), ECF No. 35, at 3. The Withheld Information includes warnings to Defendants in the NY Action that the Bank's risk management practices were deficient. ECF No. 6, Ex. A at Ex. E at 2 (Federal Reserve Consent Order: "[E]xaminations conducted by the [Federal Reserve] of [the Bank's] U.S. Operations prior to June 2023 identified ***longstanding deficiencies*** in U.S. Operations' risk management"); Exhibit B[1] at 45 (Report of

---

[1] Unless otherwise noted, all cites to "Ex. _" reference Exhibits to the Affirmation of Jeremy Robinson in Support of Petitioner's Letter Motion to File a Response to Amicus Curiae Brief of UBS Americas Holding, LLC.

Swiss regulator FINMA: "FINMA raised the absence of an adequate risk and corporate culture and the business divisions' lack of responsibility for their actions with CS's Board of Directors"). This evidence is highly relevant to Petitioner's core claim that Defendants negligently disregarded their risk management duties. The fact that Petitioner has access to *different* documents is irrelevant and, in any event, they are no substitute for documents showing that Defendants were specifically warned by regulators about the Bank's risk defects.

*Third*, the Bank's effort to obfuscate by invoking the interests of other regulators cannot be credited. AB at 4. The Bank was required to "promptly notify all relevant regulators to ensure that they have a reasonable opportunity to intervene . . . and be heard." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *6 (S.D.N.Y. Nov. 16, 2016). Notwithstanding notification, none of those regulators intervened. Regardless, aside from federal regulators subject to this Court's jurisdiction, any other regulators raise issues of New York privilege law that is for the New York court to decide.

*Fourth*, the Bank confirms that it selected only "13 documents" based on its unilateral belief that the documents UBS selected would "illustrate categories of CSI materials." AB at 5. Tellingly, the Federal Reserve elected not to make the documents selected by the Bank part of the administrative record for the Court to review. This highlights the arbitrary and capricious nature of the Federal Reserve's review, which justified the withholding of many hundreds of documents (961 documents in total) based on a small sample unilaterally selected by a self-interested party litigating against Petitioner in the NY Action.

*Fifth*, the Bank argues that some file names on the privilege log suggest that the documents might be privileged. AB at 6-7. Petitioner had to base its arguments on document file names because that was the only descriptive information logged by the Bank. It is disingenuous

for the Bank—which possesses all the documents—to support its privilege assertions based on ambiguous file names, rather than submit the documents for the Court's *in camera* review.

*Sixth*, the Bank's relevance challenges fail. AB at 8-9. Contrary to the Bank's claims, the NY action is broader than the Malachite, Greensill, and Archegos defaults. Indeed, Petitioner's claims concern Defendants' failure to establish and oversee reasonable risk management processes at the Bank's New York-based investment bank—they are not confined to the failure of three specific hedge funds. Defendants also argue that Petitioner's claims have nothing to do with Credit Suisse's near collapse and forced merger with UBS. AB at 9. While Defendants may seek to convince a New York jury that they are right—such a disputed position does not provide a basis to withhold full and fair discovery, which is the present issue.[2] Indeed, the Bank's own Swiss regulator, FINMA, found the Archegos collapse to be one of the primary causes of Credit Suisse's collapse and subsequent merger with UBS. Ex. B at 6.

*Finally*, as a last resort, the Bank asserts that "the outcome of this Action could affect the timing of the Underlying Action." AB at 10. As a threshold matter, the fact that Bank acknowledges that production of the Withheld Information could lead to the re-opening of depositions highlights the direct relevance of these documents. More fundamentally, the fact that the production of documents may lead to additional discovery is unremarkable and in no case does it provide a valid basis to permit the improper withholding of non-privileged materials. Indeed, if the Court rules that the Withheld Information should have been produced, then the Bank is responsible for any resulting delay because it improperly withheld the documents in the first place. The Bank's meritless and *in terrorem* effort to shift blame should be rejected.

---

[2] The Bank's assertion that Petitioner is attempting "to use this Court's lack of familiarity with the Underlying Action to its advantage" is both false and inappropriate. The fact that the Bank is forced to stoop to such baseless accusations only serves to underscore the lack of merit in its arguments.

3

DATED: September 26, 2024

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER  
 & GROSSMANN LLP**

*/s/ Jeremy P. Robinson*
Jeroen van Kwawegen
Jeremy P. Robinson
Edward G. Timlin
Eric J. Riedel
Stephen C. Boscolo
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400

*Counsel for Petitioner*