UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM FOR THE CITY OF PROVIDENCE, derivatively as a shareholder of CREDIT SUISSE GROUP AG on behalf of CREDIT SUISSE GROUP AG,<br><br>      Petitioner,<br><br>   -against-<br><br>BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,<br><br>      Respondent. | 24-mc-349 (AS)<br><br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

This miscellaneous action relates to a shareholder-derivative case pending in state court. Petitioner Employees Retirement System for the City of Providence (ERS) is suing Credit Suisse and the bank's officers and directors for breach of fiduciary duty in New York Supreme Court. As part of that action, ERS sought discovery from Credit Suisse. Credit Suisse claimed that some of the information requested implicated the bank's supervision by respondent Board of Governors of the Federal Reserve System (Federal Reserve). Credit Suisse refused to hand the information over, arguing that it was privileged.

ERS then asked the Federal Reserve to authorize the information's disclosure, using the agency's established procedures for such requests. The Federal Reserve denied ERS's request. The agency explained that the withheld information constituted confidential supervisory information and was protected by the bank-examination privilege, and that there wasn't good cause to overcome these protections.

ERS filed this action under the Administrative Procedure Act (APA) to challenge the Federal Reserve's decision. For the following reasons, the Federal Reserve's motion for summary judgment is GRANTED. ERS's motions for summary judgment and to supplement the record are DENIED.

## BACKGROUND

ERS filed suit against Credit Suisse and its officers and directors in New York Supreme Court on April 26, 2022. Dkt. 43-1 at 86. Discovery between the parties got underway around a year later in February 2023. *See id.* at 116. Shortly after discovery began, the bank informed ERS that it could not disclose certain documents without the Federal Reserve's permission. *See* Dkt. 43-9 at 3.

On February 20, 2024, ERS asked the Federal Reserve to allow the disclosure of 961 documents withheld by Credit Suisse. *See* Dkt. 43-1 at 6. On April 3, the Federal Reserve informed ERS and Credit Suisse that it was in the process of reviewing the request. *See* Dkt. 8-3. The agency repeatedly sought additional information and input from the parties during its review. *See* Dkts. 43-5, 43-6, 43-8, 43-9, 43-10, 43-11. At least from the Federal Reserve's perspective, authorizing the disclosure of the documents to ERS turned on whether the documents were confidential supervisory information (CSI). *See* Dkt. 43-11.

The Federal Reserve defines CSI as:

[N]onpublic information that is exempt from disclosure pursuant to 5 U.S.C. 552(b)(8) and includes information that is or was created or obtained in furtherance of the Board's supervisory, investigatory, or enforcement activities, including activities conducted by a Federal Reserve Bank (Reserve Bank) under delegated authority, relating to any supervised financial institution, and any information derived from or related to such information. Examples of confidential supervisory information include, without limitation, reports of examination, inspection, and visitation; confidential operating and condition reports; supervisory assessments; investigative requests for documents or other information; and supervisory correspondence or other supervisory communications. Additionally, any portion of a document in the possession of any person, entity, agency or authority, including a supervised financial institution, that contains or would reveal confidential supervisory information is confidential supervisory information.

12 C.F.R. § 261.2(b)(1). On disclosure of CSI, the regulations say:

It is the Board's policy regarding confidential supervisory information that such information is confidential and privileged. Accordingly, the Board does not normally disclose confidential supervisory information to the public or authorize third parties in possession of confidential supervisory information to further use or disclose the information. When considering a request to access, use, or to disclose confidential supervisory information under this section, the Board will not authorize access, use, or disclosure unless the requesting person is able to show a substantial need to access, use, or disclose such information that outweighs the need to maintain confidentiality.

12 C.F.R. § 261.23(a)(1).

The Federal Reserve denied ERS's request on May 29, 2024. Dkt. 43-11 at 7. The Federal Reserve based its decision on a review of 42 representative examples, selected from the set of 961. *See id.* at 9.[1] The agency informed ERS of its decision and the reasons for it in a fourteen-page letter. *See id.*

---

[1] The Federal Reserve invited the parties to propose up to 15 exemplars for it to review. Credit Suisse designated 13; ERS didn't designate any. *See* Dkt. 43-11 at 9 n. 5; *see also* Dkt. 43-4 at 5. Because ERS didn't provide the agency with exemplars, the Federal Reserve looked to the documents listed in ERS's initial February 20, 2024 request. *See* Dkt. 43-11 at 9 n.5.

The Federal Reserve's rationale was two-fold. The agency first determined that the withheld information was CSI and protected from discovery by the bank-examination privilege. *See id.* at 9–11. The Board explained:

> In particular, the investigative transcripts sought by [ERS] are not only investigative communications between the Board and Credit Suisse, a supervised financial institution, concerning possible violations of law, regulation, or unsafe or unsound banking practices, *see* 12 U.S.C. §§ 1818(b), (e), (i), but the particular questions and lines of inquiry the Board chose to pursue may show areas of an ongoing investigation by the Board. . . . The remaining documents within the Withheld Information consist of: internal Credit Suisse emails and documents discussing, describing, or responding to Federal Reserve supervisory or investigative requests, directions, or communications (or those of other regulators); Credit Suisse's responses to those inquiries; internal Credit Suisse emails and documents that contain or would reveal supervisory communications; direct supervisory communications between Credit Suisse and the Federal Reserve including bank examination reports and supervisory correspondence; and document productions provided by Credit Suisse to the Federal Reserve in response to its investigative or supervisory requests, are CSI under the Board's regulation.

Dkt. 43-11 at 9–10 (footnote omitted).

The Federal Reserve also considered and rejected two arguments ERS raised: first, that the "vast majority" of the withheld documents are not CSI because they are internal Credit Suisse communications; and second, that the "majority of the Withheld information" is factual and therefore not CSI. *See id.* at 10–11; Dkt. 42 at 18–23, 25–27. The Federal Reserve's response to ERS's first argument was:

> Under the Board's regulation, CSI includes "any portion of a document in the possession of any person, entity, agency or authority, including a supervised financial institution, that contains or would reveal confidential supervisory information." 12 C.F.R. § 261.2(b)(1). Moreover, such internal bank documents discussing supervisory requests and the bank's potential responses thereto are the very essence of supervisory communications and are not only CSI under the Board's regulation but also protected from discovery under the bank examination privilege. *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992) (bank-examination privilege protects the "iterative process of comment by the regulators and response by the bank" that is vital to the success of supervision); *In re B of I Holding*, 2022 WL 507663, at *3 (rejecting "plaintiff's assertion that the Bank 'must . . . produce 'internally disseminated communications not sent to the [banking agency]' . . . [because] . . . it is possible for internal [bank] communications to convey the substance of the [agency's] communications and deliberations with the Bank").

Dkt. 43-11 at 10 (alterations in original).

As for ERS's claim that most of the information sought is factual, the Federal Reserve rejected that characterization of the documents:

Contrary to your claim, the Withheld Information contains communications between Credit Suisse and its supervisors, or internal Credit Suisse emails or documents which contain or would reveal CSI, and includes documents produced to the Federal Reserve in response to supervisory or investigative requests, which is CSI under the regulation and protected from discovery by the Bank examination privilege in the form produced.

. . .

Indeed, the examples of communications that you assert in your February 20, 2024 letter are "factual" in nature, including direct questions to witnesses in depositions regarding what information they provided to the Federal Reserve in response to supervisory inquiries, *id.* at 5 and Exhs. F, G, H, and an internal Credit Suisse email listing a series of specific supervisory questions posed by Federal Reserve examiners to Credit Suisse, *id.* at 6, are quintessentially supervisory communications protected from discovery by the bank examination privilege and are CSI under the Board's regulation, are not factual information. To the extent that any Withheld Information could be characterized as "factual," I find that it is it is inextricably intertwined with opinion and therefore falls within the bank examination privilege and is CSI under the Board's regulation.

*Id.* at 10–11.

The agency next considered whether there was nevertheless good cause to disclose the information. *See* Dkt. 43-11 at 12–14. According to the agency, there wasn't. *See id.* First, the Federal Reserve found that the material sought wasn't relevant to the underlying litigation. The letter said:

There are no allegations in the Complaint concerning the Federal Reserve's supervision of Credit Suisse, nor are supervisory communications in particular, as opposed to Credit Suisse's own internal business documents regarding its risk management policies and the Archegos, Malachite and Greensill relationships, relevant to [ERS's] breach of fiduciary duty claims against the Individual Defendants.

. . .

Moreover, [ERS's] discovery requests cover a period "from January 1, 2016 to the date of production," February 20, 2024 letter, Exh. D at 15, which encompasses supervisory documents well before the risk management failures that resulted in the Archegos and Greensill losses in March 2021 and the Malachite losses in March 2020 alleged in the Complaint, and up to the present day, which is well after the alleged breaches of fiduciary duty occurred.

. . .

Furthermore, while [ERS's] Complaint seeks recovery for alleged breaches of fiduciary duty and misconduct by the Individual Defendants, [ERS's] broad request for CSI is not limited to information sent to or received by the Individual Defendants, or relating in particular to the actions or knowledge of the Individual Defendants, but rather seeks

supervisory communications with Credit Suisse generally, and therefore encompasses privileged and confidential supervisory information unrelated to the subject matter of this action.

Dkt. 43-11 at 12–13.

The agency also found that ERS could obtain equivalent information from another source:

[ERS] has access in discovery in this case to the underlying business documents in Credit Suisse's possession regarding the Archegos, Greensill, and Malachite relationships that form the gravamen of plaintiff's Complaint, as well as business documents relating to risk management practices in the Prime Services business vis-à-vis those entities and losses resulting from those relationships.

. . .

Moreover, with regard to the ten Federal Reserve interview transcripts [ERS] seek[s], [ERS] has the opportunity in discovery in this action to depose knowledgeable individuals including current and former Credit Suisse officers and directors, and to develop a record specifically tailored to [ERS's] claims as opposed to the Federal Reserve's investigative lines of inquiry. Indeed, [ERS] has already deposed in discovery in this action six of the ten individuals whose Federal Reserve interview transcripts [ERS] seek[s] and has indicated its intention to depose most of the remaining individuals before the conclusion of discovery.

. . .

In addition to this information, [ERS] has available to it the publicly available Paul Weiss report and underlying documents and testimony. . . . In addition, [ERS] has available to it, and has cited extensively in its Complaint from, the publicly available Bank of England letter, and has sought discovery from defendants regarding that letter.

*Id.* at 13–14.

Finally, the agency found that:

[C]oncerns regarding disclosure of CSI are heightened in this case because [ERS] seek[s] access to documents and witness interviews relating to an ongoing Federal Reserve investigation. In addition to the chilling of candor in communications between banks and their supervisors that is attendant to disclosures of CSI, providing [ERS] access to the Withheld Information in this case could compromise an ongoing Federal Reserve investigation by revealing areas of particular interest to the Federal Reserve and by compromising the confidentiality of witness interviews that were taken under promise of confidentiality for purposes of the Federal Reserve's investigation, and not for use in private litigation where [ERS] has access to the underlying factual information.

*Id.* at 14.

On July 31, 2024, two months after receiving the Federal Reserve's decision, ERS filed this action in federal court. ERS seeks review of the Federal Reserve's decision under the APA, which permits the filing of a miscellaneous action for discovery in lieu of a complaint. *See* Dkt. 4.

## LEGAL STANDARDS

The Administrative Procedure Act (APA) requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). "The plaintiff bears the burden of establishing that agency action is arbitrary, capricious or otherwise unlawful." *Coniglio v. Garland*, 556 F. Supp. 3d 187, 203 (E.D.N.Y. 2021).

In an APA action, the district court sits as an appellate tribunal. *Saleh v. Blinken*, 2023 WL 5091819, at *1 (2d Cir. Aug. 9, 2023). The court looks to the administrative record that the agency relied upon and styles its determinations as one for summary judgment. *Id.* "While the usual summary judgment standard under Federal Rule of Civil Procedure 56 does not apply in such cases, summary judgment nonetheless is generally appropriate because courts address legal questions in deciding whether the agency acted arbitrarily, capriciously or in some other way that violates 5 U.S.C. § 706." *Seife v. U.S. Dep't of Health & Hum. Servs.*, 440 F. Supp. 254, 271 (S.D.N.Y. 2020) (cleaned up).

## DISCUSSION

### I. The Federal Reserve's regulations govern.

Both sides agree that this action arises under the APA. *See* Dkt. 42 at 15; Dkt. 18 at 12. But they disagree about everything else. ERS argues that this Court reviews the Federal Reserve's decision *de novo* because a determination of privilege is a legal one and the APA instructs courts, not agencies, to "decide all relevant questions of law." 5 U.S.C. § 706; *see also Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 229 (2d Cir. 2020). The "law" that ERS says applies is the common-law bank-examination privilege. That privilege is both limited and qualified—and most importantly, the agency bears the burden of demonstrating its application. *See In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Rsrv. Sys.*, 967 F.2d 630, 633–34 (D.C. Cir. 1992) (describing bank-examination privilege and its rationale).

The Federal Reserve asks for deference, arguing that the Court may only review whether its decision was arbitrary or capricious under 5 U.S.C. § 706(2)(A). "Under this 'narrow' standard of review, 'a court is not empowered to substitute its judgment for that of the agency.'" *Town of Southold v. Wheeler*, 48 F.4th 67, 77 (2d Cir. 2022) (citation omitted). The Federal Reserve says that the normal standards applicable on a discovery motion in federal court don't apply here. The only question is whether the agency reasonably applied its regulations to ERS's request.

To get a handle on the doctrinal framework at issue, it's helpful to start a few steps before the APA comes into play. Generally, federal agencies must make agency records available to the

public. *See Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 355 (2d Cir. 2005). But this requirement is not without limit. *See* 5 U.S.C. § 552(b)(1)–(9). Matters "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions" are one of the few exceptions to this broad disclosure requirement. *Id.* § 552(b)(8).

The Federal Reserve's regulations define CSI as equivalent to "nonpublic information that is exempt from disclosure pursuant to 5 U.S.C. 552(b)(8)." 12 C.F.R. § 261.2(b)(1). The regulations also tightly control CSI's disclosure. They say:

> All confidential supervisory information and other nonpublic information, including but not limited to information made available under this subpart, remains the property of the Board, and except as otherwise provided in this regulation, no person, entity, agency, or authority to whom the information is made available or who otherwise possesses the information, including any officer, director, employee, or agent thereof, may use any such information for an unauthorized purpose or disclose any such information without the prior written permission of the General Counsel.

*Id.* § 261.20(a).

In other words, even if a party—such as a regulated financial institution—possesses CSI, it can't turn over any CSI absent express written permission from the Federal Reserve. That prohibition applies even when CSI is sought via civil requests for production during litigation. *See id.* § 261.24(c).

As for the party seeking CSI, it must "file a written request with the General Counsel" for "any proposed use of confidential supervisory information in litigation before a court, board, commission, agency, or arbitration." *Id.* § 261.23(b)(1)(iii). That request should include, among other things, "[a] narrow and specific description of the confidential supervisory information the requester seeks to access or to disclose for use in the litigation including, whenever possible, the specific documents the requester seeks to access or disclose"; "[t]he relevance of the confidential supervisory information to the issues or matters raised by the litigation"; and "[t]he reason why the information sought, or equivalent information adequate to the needs of the case, cannot be obtained from any other source." *Id.* § 261.23(b)(2)(iii)–(v).

But things don't end there. If you're a litigant seeking information from the Federal Reserve and the Federal Reserve isn't a party to your suit (the case here), the impact of the Federal Reserve's regulations will depend on whether your suit is in federal or state court. If you sue in federal court, you can ask a federal court to issue a subpoena requiring the agency to hand over the information you're seeking. The circuits differ on whether you'll need to follow the agency's disclosure procedures before moving to compel compliance with any subpoena, as well as the standards governing judicial review of the Federal Reserve's response to a discovery request. *See Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 278–81 (S.D.N.Y. 2013).

The cards fall differently in state court. Sovereign immunity bars a state court from enforcing a subpoena against a federal agency. *See Houston Bus. J., Inc. v. Off. of Comptroller of Currency*, 86 F.3d 1208, 1211 (D.C. Cir. 1996); *see also St. Vincent Med. Grp., Inc. v. U.S. Dep't of Just.*, 71 F.4th 1073, 1075 (7th Cir. 2023). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and the APA's waiver of sovereign immunity applies only to "[a]n action in a court of the United States." 5 U.S.C. § 702; *see also Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989). If its immunity isn't abrogated, "the United States cannot be forced to obey a subpoena issued by a state court, state grand jury, or state legislative committee." *Puerto Rico v. United States*, 490 F.3d 50, 71 (1st Cir. 2007) (Boudin, J., concurring); *see also id.* at 71 n. 14 (collecting cases). Without a subpoena as even a possibility, a state court litigant's path to receiving CSI must run through the Federal Reserve.

This also means that when a state-court litigant disagrees with the Federal Reserve's interpretation and application of its CSI regulations, their only option is to bring an APA action contesting the agency's decision. *See St. Vincent*, 71 F.4th at 1075. That action is bound by the APA's framework for reviewing agency decision making. On this, the circuits are unanimous. *See id.* & n. 2 (citing *Watts v. SEC*, 482 F.3d 501, 508–09, 508 n. * (D.C. Cir. 2007) (Kavanaugh, J.); *Puerto Rico*, 490 F.3d at 60–61; *Davis Enters. v. EPA*, 877 F.2d 1181, 1186 (3d Cir. 1989); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277–78 (4th Cir. 1999); *CF Indus., Inc. v. ATF*, 692 F. App'x 177, 181–82 (5th Cir. 2017); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994)). ERS can't point to a single case saying otherwise. *See* Dkt. 53 at 27: 22–25.

As the Federal Reserve notes, the bulk of ERS's authorities result from underlying federal court litigation and so are irrelevant to ERS's suit. *See, e.g.*, *King v. Habib Bank Ltd.*, 2023 WL 8879170, at *1 (S.D.N.Y. Dec. 22, 2023) (arising from federal lawsuit against bank accused of financing terrorism); *Wultz*, 61 F. Supp. 3d at 277 (same); *Merchants Bank v. Vescio*, 205 B.R. 37, 39 (D. Vt. 1997) (arising from federal bankruptcy court order); *Comm. for Nuclear Resp., Inc. v. Seaborg*, 463 F.2d 788, 790 (D.C. Cir. 1971) (per curiam) (arising from federal lawsuit against Atomic Energy Commission); *S.E. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2022 WL 3567340, at *1 (M.D. Pa. Aug. 18, 2022) (arising from federal class action). The courts in these cases weren't considering APA challenges to an agency's decision to withhold information. Here, the APA is the only ground for ERS's suit. For this reason, ERS's arguments that the agency's regulations are beside the point and that the Federal Reserve bears the burden of establishing that privilege applies are unfounded. *See CF Indus., Inc.*, 692 F. App'x at 182 (rejecting this approach in APA action). In an APA suit, neither is true.

For its part, the Federal Reserve too hastily concludes that application of the APA settles the standard of review. ERS might have challenged the Federal Reserve's regulations as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(C). The Court owes no deference to an agency's determination of this question. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent

judgment in deciding whether an agency has acted within its statutory authority."). But ERS didn't go that route. ERS never once mentions the text of the Federal Reserve's regulations or the statutes that give rise to them. Any objection to the statutory authorization of the Federal Reserve's regulations is waived.[2]

Where does this leave us? ERS's challenge ultimately amounts to one about the Federal Reserve's application of its disclosure regulations. In line with the view adopted by every circuit to have considered the issue, the Court reviews this challenge under 5 U.S.C. § 706(2)(A)'s arbitrary-and-capricious standard.

## II.    The Federal Reserve did not act arbitrarily or capriciously.

When reviewing whether an agency's decision is arbitrary or capricious, the Court must look to "whether the agency 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150–51 (2d Cir. 2008) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Court will not weigh the evidence itself or substitute its judgment for that of the agency. *Id.* at 150.

ERS argues that the agency erred twice: in finding that the withheld information was CSI and in finding that there wasn't good cause to disclose the information. The Federal Reserve did not act arbitrarily on either count.

First, the agency reasonably determined that the information ERS sought was CSI. *See Pub. Citizen, Inc. v. Mineta*, 340 F.3d 39, 53 (2d Cir. 2003) (agency must articulate "a rational connection between the facts found and the choice made" (quoting *State Farm*, 463 U.S. at 43)). The Federal Reserve explained the grounds for its decision: that the withheld information consisted of direct communications between the Federal Reserve and Credit Suisse or internal bank discussions about what the Federal Reserve had said to Credit Suisse while supervising. *See Shah v. Dep't of Just.*, 714 F. App'x 657, 659 (9th Cir. 2017) ("We cannot say that [the agency's] denial [of disclosure request] is arbitrary and capricious where it provided a plausible reason for its viewpoint based on agency expertise.").

---

[2] At points, ERS seems to argue that in applying its regulations the Federal Reserve stepped beyond the bounds of the bank-examination privilege and so "create[d] privilege" where it had no power to do so. *See* Dkt. 42 at 17; Dkt. 31 at 6–8. But the Federal Reserve's decision tracks the bank-examination privilege. At each turn, it cited both its own regulations and the bank-examination privilege as grounds for the agency's determination. *See* Dkt. 43-11.

ERS also suggested at oral argument that the Federal Reserve's decision wasn't "in accordance with the law." *See* Dkt. 53 at 25:6–8; *see also* 5 U.S.C. § 706(2)(A). But when pressed about what applicable law the agency allegedly flouted, ERS couldn't direct the Court to any relevant law apart from the agency's regulations. *See* Dkt. 53 at 28:1–30:4.

ERS argues that the Federal Reserve's explanation is too conclusory, and that the agency should have established that the information was privileged on a document-by-document basis and "reference[d] the subject matter" of each. *See* Dkt. 42 at 23.

That's too demanding a standard—the Federal Reserve points out that courts often review exemplars when determining whether large volumes of documents are privileged. *See* Dkt. 18 at 22–23 & n. 8. ERS also conceded sampling's permissibility at oral argument. *See* Dkt. 53 at 32:7–24. As to the sample set used here, ERS hasn't shown that the exemplars the Federal Reserve examined were outliers or such weak indicators of the nature of the full document set as to render the agency's decision irrational. *See Homelite v. OSHA*, 1996 WL 15467, at *4 (4th Cir. Jan. 17, 1996) (agency's decision must be "supported by such relevant evidence as a reasonable mind might accept as adequate" (internal quotations and citation omitted)). What's more is that the agency didn't need to "reference the subject matter" of every withheld communication, because subject matter isn't determinative of whether information is CSI. As the regulation sets out—and the agency explained—whether something is CSI turns primarily on its provenance, *see* 12 C.F.R. § 261.2(b)(1) (CSI includes information that "is or was created or obtained in furtherance" of the Board's supervision), or whether it would reveal other CSI, *see id*.

ERS also claims the Federal Reserve is wrong that the withheld information is CSI. To make this argument, ERS offers up examples of file names and unredacted documents it says are squarely not CSI. *See* Dkt. 42 at 23–25.

Undermining an agency's decision takes more than just singling out other possibly conflicting evidence. *See State ex rel. Kobach v. U.S. Dep't of Interior*, 72 F.4th 1107, 1127 (10th Cir. 2023) (noting that "conflicting evidence alone is not enough to show that [an agency] acted arbitrarily and capriciously"); *see also Crooks v. Mabus*, 845 F.3d 412, 423 (D.C. Cir. 2016). As the Court noted above, the Federal Reserve already considered and rejected ERS's argument that the withheld information was purely factual. *See* Dkt. 43-11 at 10–11. The Board clearly said, "the Withheld Information contains communications between Credit Suisse and its supervisors, or internal Credit Suisse emails or documents which contain or would reveal CSI, and includes documents produced to the Federal Reserve in response to supervisory or investigative requests, which is CSI under the regulation." *Id*. at 10. And the Federal Reserve also noted that it based its conclusion on a "review of exemplars of the Withheld Information, as well as the regulation and applicable caselaw." *Id*. ERS's argument is just another way of claiming that the Federal Reserve should have reviewed all 961 documents one-by-one, which, again, ERS conceded at oral argument wasn't required.

Second, the Federal Reserve reasonably concluded that there wasn't good cause to disclose the information. The agency walked through the three grounds for why disclosure wasn't warranted: ERS hadn't shown that the requested CSI was relevant to the underlying litigation, ERS could access equivalent information elsewhere, and there was a heightened need for confidentiality given the Federal Reserve's ongoing investigation. *See* Dkt. 43-11 at 12–14. In other words, the agency "considered the relevant factors set forth in the regulations and articulated a rational and substantiated connection between the factors and [its] reasons for denying" ERS's request. *Reeves*

*v. Barnhart*, 125 F. App'x 120, 122 (9th Cir. 2005). The APA prevents the Court from now flyspecking the agency's decision. This is especially so given that courts have long recognized that an agency's decision whether to disclose information is "essentially a policy decision about the best use of the agency's resources." *COMSAT Corp.*, 190 F.3d at 278; *see also St. Vincent*, 71 F.4th at 1076.

On reply, ERS contends that the Federal Reserve's decision was arbitrary because it "ignored inconvenient facts"—namely a 2012 memorandum of understanding between the Federal Reserve and Credit Suisse and a later report from Credit Suisse. ERS claims these documents establish the withheld information's relevance. Dkt. 31 at 11–13. It also suggests that the agency selectively turned a blind eye to the 2012 MOU and subsequent report in order "to hide facts suggesting ineffective oversight." *Id.* at 11–12.

Not so. First, ERS's aspersions about the agency's motivations don't come close to overcoming the presumption of regularity to which the agency is entitled. *See NLRB v. Cnty. Waste of Ulster, LLC*, 455 F. App'x 32, 35 (2d Cir. 2012). Second, ERS never raised the "inconvenient facts" it now relies upon during the administrative process. *See* Dkt. 36 at 13. So ERS has forfeited this objection. *See Gonnella v. SEC*, 954 F.3d 536, 543 (2d Cir. 2020) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts." (alterations in original) (citation omitted)); *Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010) ("A party forfeits arguments that are not raised during the administrative process."). Finally, even if the Federal Reserve had considered the documents ERS now raises (and agreed with ERS's characterization), ERS hasn't shown that consideration of these documents undermines the other two bases the Federal Reserve outlined for denying ERS's request—that ERS has access to equivalent information elsewhere and that the Federal Reserve's ongoing investigation create a heightened need for confidentiality. *See BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003) ("When an agency offers multiple grounds for a decision, we will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable.").

## III.    The motion to supplement the record is denied.

Two months after the parties' dueling summary judgment motions were fully briefed, ERS moved to supplement the record. Dkt. 47. ERS seeks to introduce the 2012 MOU between the Federal Reserve and Credit Suisse that ERS claims the Federal Reserve ignored when rejecting its disclosure request. According to ERS, considering the MOU "will allow the Court to better determine whether the documents challenged in the Motion are privileged, whether any privilege should be waived, and/or whether the Federal Reserve's denial of Petitioner's [disclosure] request was arbitrary and capricious." Dkt. 47 at 2.

A court will not lightly add to the administrative record. *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) ("Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision."). "[A]n extra-record

investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Id.*

Neither scenario applies here. As the Court noted above, the most ERS marshals along the lines of bad faith is a single sentence claiming that the Federal Reserve denied its request "to hide facts suggesting ineffective oversight." *See* Dkt. 31 at 11–12. No evidence in the record backs up ERS's claim. Nor is an extra-record investigation "necessary" because of a lack of formal administrative findings by the Federal Reserve. The Federal Reserve connected the dots in its decision to deny ERS's request. *See* Dkt. 43-11. As ERS's letter admits, it seeks to introduce extra-record evidence now to undercut the agency's decision. The Court cannot oblige. *See Safe Haven Home Care, Inc. v. United States Dep't of Health & Hum. Servs.*, 130 F.4th 305, 324 (2d Cir. 2025) ("Consideration of [extra-record] evidence to determine the correctness or wisdom of the agency's decision is not permitted." (alteration in original) (citation omitted)).

**CONCLUSION**

For the above reasons, ERS's motion for summary judgment and to supplement the record are denied. The Federal Reserve's motion for summary judgment is granted. The Clerk of Court is directed to terminate Dkts. 4, 17, 44, 47, and 51.

In terms of next steps, the Federal Reserve confirmed at oral argument that ERS is free to make another submission to the agency and present any argument for further consideration or additional documents for the agency to review. Dkt. 53 at 39:11–40:6. The Federal Reserve has further confirmed that it will evaluate any such request in good faith and respond in "a few weeks." *See id.* To the extent ERS complains that the agency either didn't review one-by-one critical documents or didn't address certain arguments that ERS either presented or came up with after the fact, ERS can engage anew with the agency on those issues.

What this means in practice is that in a fraction of the time that it took ERS to file this action, the parties to brief their respective summary judgment motions, and the Court to hold oral argument and consider ERS's claims, ERS could have made additional disclosure requests to the Federal Reserve and potentially receive the documents it seeks. Far from the end of the road, this federal action may have been an unnecessary detour.

SO ORDERED.

Dated: June 23, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge